(No. 61166.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RICHARD STACK, Appellee.

*Opinion filed May 12, 1986.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Michael E. Shabat, Inge Fryklund and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Marilyn Martin, Assistant Public Defender, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

Is a defendant entitled to a new trial because the State responded to his insanity defense by introducing evidence, over objection, that the defendant exercised his right against self-incrimination after being given the *Miranda* warnings?

Sometime during the afternoon of May 11, 1980, Richard Stack killed his wife and infant son. Defendant admitted the killings but claimed he was insane at the time. A jury in the circuit court of Cook County rejected that defense and found Stack guilty on both counts of murder; he was sentenced to concurrent life terms for each offense. On appeal, defendant's convictions were reversed (128 Ill. App. 3d 611), and we granted the State's petition for leave to appeal in accordance with Supreme Court Rule 315 (94 Ill. 2d R. 315).

The State contends that the appellate court erred in finding that prosecutors denied the defendant a fair trial by commenting on his exercise of the right to remain silent. After the defendant was arrested, he was taken to a hospital by the arresting officers for treatment of injuries sustained during the homicides. Defendant introduced evidence at trial that he made bizarre, disconnected statements to doctors and hospital personnel. In response, the State elicited the following testimony re-

garding defendant's conversation with an assistant State's Attorney.

"Q. [Assistant State's Attorney] Now, you said that Mr. Stack couldn't perceive reality on that day. Does it indicate in this document, doctor, that Mr. Bredeman, the state's attorney, went to the hospital and informed Stack of his right, pursuant to Mirando [*sic*], to each one he asked him if he understood and he replied he did. When he finished informing him of his rights, Richard Stack asked what would happen if he chose to remain silent. 'I told him I wouldn't ask him any questions,' And [*sic*] said that is what he wanted.

MR. KULL [defense attorney]: Objection.

\*\*\*

MR. KULL: Well, Judge, can I have a sidebar?

THE COURT: No, overruled.

MR. KULL: I make a motion for a mistrial.

THE COURT: Denied. Come on, let's go."

And later:

"Q. [Assistant State's Attorney] What did Mr. Stack say to Mr. Bredeman, tell the ladies and gentlemen of the jury?

A. [Detective Foley] Mr. Stack asked Mr. Bredeman what would happen if he chose not to say anything to Mr. Bredeman, to which Mr. Bredeman said I won't ask you any questions. Mr. Stack then said that's the way he wanted it. And the interview was stopped—

MR. KULL: Objection.

THE COURT: Overruled."

The defendant objects to this evidence as an unconstitutional burden on his exercise of the *Miranda* rights. Although the State acknowledges that it may not comment on defendant's silence so as to draw an inference of guilt (*Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229), it argues here that the behavioral component of defendant's lucid response to the *Miranda* warnings is admissible to rebut

an insanity defense.

In *Doyle,* the court overturned defendants' convictions because of prosecutorial comments regarding defendants' exercise of *Miranda* rights. That decision turns on the fundamental unfairness of penalizing a defendant for accepting a course of action which the State has invited and the inherent ambiguity in a defendant's decision to remain silent (he might simply be adopting the State's advice). The State argues that these concerns are not implicated in this case.

Contrary to the State's assertions, Richard Stack was clearly penalized for having responded to the *Miranda* warnings. Had he not responded, the interrogation could have continued, although any statement made by the defendant would have been inadmissible without proof that he had understood the right to remain silent and had waived that right. (*Tague v. Louisiana* (1980), 444 U.S. 469, 62 L. Ed. 2d 622, 100 S. Ct. 652.) Since, in view of *Tague,* a defendant can end interrogation only by making an overt response, exercise of the right is clearly penalized if the State can use such a response to establish defendant's lucidity and, therefore, his culpability. For this reason, the use of defendant's *Miranda* response "cuts down on the privilege by making its assertion costly" and is violative of the fourteenth amendment. *Griffin v. California* (1965), 380 U.S. 609, 614, 14 L. Ed. 2d 106, 110, 85 S. Ct. 1229, 1233.

The defendant's trial did not comport with the requirements of due process because it is fundamentally unfair for the government to suggest this course of action and then use defendant's acceptance to prove his sanity. (*State v. Burwick* (Fla. 1983), 442 So. 2d 944.) *Miranda* warnings carry an implied promise that exercise of the right to remain silent will not be used against the defendant (*Doyle v. Ohio* (1976), 426 U.S. 610, 618, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245); the State

may not exploit the recital of *Miranda* warnings to sing the Siren's song and lure a defendant into creating evidence against himself. In *Wainwright v. Greenfield* (1986), 474 U.S. 284, 88 L. Ed. 2d 623, 106 S. Ct. 634, decided while this case was under advisement in this court, the United States Supreme Court faced the very issue we now confront, and the court determined that it is fundamentally unfair for the prosecution to breach the State's implied promise by using post-*Miranda* silence, including statements of intent to remain silent (474 U.S. 284, 295 n.13, 88 L. Ed. 2d 623, 632 n.13, 106 S. Ct. 634, 640-41 n.13), as evidence of the defendant's sanity.

We are urged by the State not to apply *Greenfield* "retroactively" to this case because it was an unforeseeable extension of *Doyle* (although *Doyle* itself applies retroactively to cases on direct appeal (*Phelps v. Duckworth* (7th Cir. 1985), 757 F.2d 811)) and because it will prejudice the State's case to be forced to retry the defendant's culpability four years after the original trial (*Solem v. Stumes* (1984), 465 U.S. 638, 79 L. Ed. 2d 579, 104 S. Ct. 1338). How the State could appeal from an adverse ruling in the appellate court and then argue that inevitable delays in the appeal process have so prejudiced its case as to require reversal of the appellate court decision is difficult to understand. Furthermore, we do not agree with the State's characterization of *Greenfield* as an unexpected extension of *Doyle*; the court did no more in *Greenfield* than apply the rules set forth in its previous opinions.

> "The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. It is equally unfair to breach that promise by using silence to overcome a defendant's plea of insanity. In both situations, the state gives warnings to protect constitu-

tional rights and implicitly promises that any exercise of those rights will not be penalized. In both situations, the State then seeks to make use of the defendant's exercise of those rights in obtaining his conviction. *The implicit promise, the breach, and the consequent penalty are identical in both situations.*" (Emphasis added.) *Wainwright v. Greenfield* (1986), 474 U.S. 284, 292, 88 L. Ed. 2d 623, 630-31, 106 S. Ct. 634, 639.

*Greenfield* merely fleshes out the *Doyle* rule and applies it where necessary to avoid a fundamentally unfair trial. *Solem v. Stumes* (1984), 465 U.S. 638, 79 L. Ed. 2d 579, 104 S. Ct. 1338, cited by the State, is inapposite. In *Solem* the court determined that the *per se* rule of *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, did not apply to cases on collateral review. Unlike *Greenfield, Edwards* merely adopts a prophylactic rule to prevent certain *Miranda* violations; "*Edwards* did not confer a substantive constitutional right." (*Solem v. Stumes* (1984), 465 U.S. 638, 644 n.4, 79 L. Ed. 2d 579, 588 n.4, 104 S. Ct. 1338, 1342 n.4.) But *Greenfield* applies a recognized substantive right which shows that the defendant in this case did not receive the fair trial to which he was entitled. Since *Greenfield* simply applies "settled precedents to new and different fact situations," there is no question but that it governs this case. *United States v. Johnson* (1982), 457 U.S. 537, 549, 73 L. Ed. 2d 202, 213, 102 S. Ct. 2579, 2586; see *Shea v. Louisiana* (1985), 470 U.S. 51, 84 L. Ed. 2d 38, 105 S. Ct. 1065 (reasoning of *Johnson* applies to fifth amendment cases, so *Edwards v. Arizona* retroactively governs cases on direct review).

Prior to the court's decision in *Greenfield,* the State had not argued for reversal of the appellate court's decision on the ground that it was an erroneous application of retroactive law; indeed, the State could not have argued retroactivity since the case was before the appel-

late court on direct appeal. The common law rule for both civil and criminal cases requires legal rulings to "be given effect while a case is on direct review" (*Linkletter v. Walker* (1965), 381 U.S. 618, 627, 14 L. Ed. 2d 601, 607, 85 S. Ct. 1731, 1736). Now that the supreme arbiter of Federal constitutional law (see *Atkins v. Atkins* (1944), 386 Ill. 345, 347) has agreed with the conclusion reached by our appellate court in this case, the State asks this court to reverse the appellate court's decision, not despite the Supreme Court's endorsement, but because of that endorsement. There is no logic in the State's position that an appellate court opinion we know to be correct as a matter of law, and which we would otherwise affirm, must now be reversed because, during the pendency of this appeal, the United States Supreme Court has agreed with a legal doctrine announced by our appellate court. *Wainwright v. Greenfield* (1986), 474 U.S. 284, 295 n.14, 88 L. Ed. 2d 623, 632-34 n.14, 106 S. Ct. 634, 641-42 n.14.

The State argues that introduction of the defendant's response is proper to show that, contrary to evidence of defendant's bizarre behavior on the afternoon in question, he was lucid and in touch with reality within moments after displaying such behavior. Hoping to distinguish *Greenfield*, the State claims that the defendant's decision to invoke his *Miranda* rights "was not of particular interest," and that the State must be allowed to admit the statement because the defendant "provided no other conversational evidence of contact with reality."

We are unfamiliar with any rule of constitutional law allowing the State to deprive an individual of his fundamental rights because the State cannot otherwise obtain a conviction. Such a precedent would raze the foundation of American criminal procedure, and we reject the State's argument because it totally fails to distinguish *Greenfield* on any persuasive basis. Additionally, we

question the probative value of this evidence. "Insanity is not the equivalent of stupidity." (*Commonwealth v. Mahdi* (1983), 388 Mass. 679, 695, 448 N.E.2d 704, 713; see M. Bleuher *The Schizophrenic Disorders* 496 (1978).) But *Greenfield* is dispositive in this case, so we need not address the ambiguity inherent in a defendant's exercise of his *Miranda* rights. We agree with the appellate court on this issue and conclude that the defendant is entitled to a new trial.

The appellate court also reversed the circuit court on the ground that the trial judge erred in refusing to ask the members of the venire, as requested by the defendant, whether they could return a verdict of not guilty by reason of insanity provided the evidence established that the defendant was insane at the time he killed his wife and son. Although we have already determined that the violation of defendant's fifth amendment rights requires a new trial, we consider this issue argued by the State in its appeal as it may arise again at a second trial. The State argues that the trial court properly refused to tender defendant's *voir dire* questions regarding the insanity defense. Four such questions were submitted by defense counsel:

"1. Have you or anyone close to you had any experience with a psychiatrist or psychologist?

2. Do you agree with the concept that a person should not be held responsible for his acts if he is not capable of conforming his conduct to the requirements of the law?

3. Can you find someone not guilty by reason of insanity?

4. Do you have any feeling or viewpoint concerning the defense of insanity in a criminal case? If so, what?"

Only the first question was propounded by the judge because, he said, the others were argumentative and presupposed knowledge of how the insanity defense is le-

gally defined in Illinois.

In reversing the circuit court, the appellate court held that refusal to ask defendant's tendered insanity questions constituted an abuse of discretion. The State argues in this court that refusal to ask the last three questions was properly within the trial court's discretion. We agree that the second and third questions are vague and improperly phrased and their rejection can be upheld for that reason. The fourth question was proper, however, and should have been put to the prospective jurors.

The State contends, on the basis of Supreme Court Rules 431 and 234 (87 Ill. 2d R. 431; 94 Ill. 2d R. 234), that the appellate court reached the wrong result with respect to all three questions. It argues that those rules prohibit inquiry into matters of law during *voir dire*. Rule 234, made applicable to criminal cases by Rule 431, provides in part: "Questions shall not directly or indirectly concern matters of law or instructions."

Rule 234 was promulgated to shorten *voir dire* by eliminating that portion of the process which did not advance the legitimate ends of impaneling an impartial jury. The rule is aimed at this specific evil since "no reason is perceived for questioning [prospective jurors] as to legal principles or concepts beyond ascertaining whether or not they are willing to accept and follow the instructions concerning the *law of the case*." (Emphasis added.) (*People v. Lobb* (1959), 17 Ill. 2d 287, 302.) The fourth question does not violate Rule 234 because it seeks to determine only whether the prospective juror would be biased against an insanity defense. Since the question does not attempt to state the law but merely probes for bias, it cannot be faulted for containing argumentative and misleading statements of law, the abusive practice put to rest by the rule.

The State argues that the question is deficient in failing to set forth the precise legal test of insanity concern-

ing which prospective jurors could express a viewpoint, but setting forth the law during *voir dire* is exactly the practice proscribed. The State also argues that jurors would not be able to answer intelligently any of the questions rejected by the trial judge because they would not know the law of insanity until instructed at the close of trial. That proposition proves too much: the State does not contend that it is improper to ask the venire members whether they will follow the law as instructed (indeed, the State says such examination is appropriate) even though they have not at the time of *voir dire* been instructed on any law whatsoever.

In *People v. Wright* (1985), 111 Ill. 2d 128, prospective jurors were asked whether they could impose the death penalty in an appropriate capital case. A majority of this court found such *voir dire* unexceptionable under Rule 234, saying that "the State, in its attempt to discern the potential jurors' attitudes to the death penalty inquired if they would be able to impose the death penalty if such a sentence was supported by the law and facts. We find such questioning appropriate \*\*\*." (111 Ill. 2d 128, 158-59.) Similarly, attorneys have been allowed in dramshop actions to ask prospective jurors whether they disagreed with the dramshop statute. (*Schneider v. Kirk* (1967), 83 Ill. App. 2d 170.) The thread which runs through those cases is that the jury was going to be asked to apply an extraordinarily controversial legal requirement against which many members of the community may have been prejudiced. Inquiry into the feeling or viewpoint of the venire regarding such controversial legal propositions is consistent with a *bona fide* examination conducted so that the parties can intelligently exercise their prerogatives to challenge. Furthermore, a defendant's sixth and fourteenth amendment rights to an impartial jury (U.S. Const., amends. VI, XIV) are diminished when jurors

are prejudiced against an appropriate verdict of not guilty by reason of insanity.

The State argues that the trial judge's refusal to pose the fourth question was not erroneous because sufficient inquiry was made of the venire's willingness to apply the law as instructed by him, and the defendant was entitled to no more. Even if *voir dire* had explored that question, an assertion which the record belies, we would still find an abuse of discretion. Although the insanity defense upon which the defendant relied is a well-recognized legal defense, it remains a subject of intense controversy. In *People v. Bowel* (1986), 111 Ill. 2d 58, 65, we described insanity as "a defense which is known to be subject to bias or prejudice." A defendant's right to an impartial jury is not, therefore, protected where the sole inquiry into whether jurors will abide by the law allowing that controversial defense is the far broader and all-embracing question which the State contends was propounded in this case, namely, whether the jurors would follow the court's instructions on the law.

Just as the State is allowed to probe the venire for jurors who would not follow the law of capital punishment, the defendant should be allowed to identify and challenge those prospective jurors who would refuse to follow the statutory law of the insanity defense. As noted by the appellate court, "parties have the right to have jurors examined concerning their attitudes toward the insanity defense when such is involved in a case." *People v. Robinson* (1981), 102 Ill. App. 3d 884, 891; *People v. Witted* (1979), 79 Ill. App. 3d 156; see *United States v. Allsup* (9th Cir. 1977), 566 F.2d 68; *Washington v. State* (Fla. App. 1979), 371 So. 2d 1108; *State v. Olson* (1971), 156 Mont. 338, 480 P.2d 822; *State v. Sanders* (1978), 161 W. Va. 399, 242 S.E.2d 554.

The appellate court found additional errors committed at trial and reversed defendant's conviction on those

grounds as well. Since the State has raised only two issues on appeal to this court, we need not consider the others; the appellate court rulings on those other matters remain the law of the case. Having affirmed the appellate court decision in part on the matters appealed by the State, we remand this cause to the circuit court for further proceedings consistent with this opinion.

*Affirmed in part and remanded.*