THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES F. BOMMERSBACH, Defendant-Appellant.

First District (1st Division)   No. 1—90—0689

Opinion filed May 4, 1992.

Randolph N. Stone, Public Defender, of Chicago (Stephanie L. Ellbogen, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Janet Mahoney, and Leslie Quade, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a hearing before a jury, defendant, James F. Bommersbach, was adjudicated a sexually dangerous person and committed to the custody of the State of Illinois Department of Corrections. On appeal, defendant contends that: (1) the trial court erred in rejecting a proposed *voir dire* question concerning the venire members' opinions as to the validity of psychiatric testimony; and (2) defendant was prejudiced by the testimony of two nonqualified psychiatrists. For the following reasons, we affirm the judgment of the trial court.

The following facts are relevant to this appeal. On December 15, 1987, defendant was arrested and charged with the attempted aggravated criminal sexual assault of two prostitutes. At that time, defendant was on Federal parole.

On January 23, 1990, a hearing was conducted for the purpose of adjudging defendant a sexually dangerous person pursuant to the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1987, ch. 38, par. 105—1.01 *et seq.*). At the hearing, the State presented evidence of defendant's numerous prior convictions during the period 1951 to 1981 for indecent liberties with a child, aggravated kidnapping, rape, sexual assault, indecent assault, forcible confinement, weapons offenses, and violation of probation. The evidence at the hearing revealed that defendant was twice declared a criminal sexual psychopath, in 1960 and again in 1967.

In addition, four psychiatrists testified that, in their opinions, defendant was a sexually dangerous person. At the time Dr. Stipes examined defendant, he had been a psychiatrist with the Psychiatric Institute of the Cook County Circuit Court for 10 years. He testified that defendant suffered from antisocial personality disorder as well as the three sexual deviations of sexual sadism, pedophilia and transvestic fetishism. The testimony of Dr. Kaplan, a psychiatrist with the same Institute since 1960, corroborated that of Dr. Stipes.

Dr. Hardy testified that he had been a psychiatric consultant with the Forensic Psychiatric Center at Rush-Presbyterian-St. Luke's Hospital for three years at the time he examined defendant. Dr. Hardy testified as to the psychological tests to which defendant was subjected, and his testimony corroborated that of the other testifying doctors with regard to defendant's sexual deviations and propensity to commit crimes. Dr. Hardy testified that he relied on the psychological reports prepared by other doctors and conferred with Dr. James Cavanaugh.

Dr. Markos, a psychiatrist with the Psychiatric Institute, testified that at the time he examined defendant, he had been a licensed physician in the State of Illinois for six to seven years and that he has been diagnosing mental disorders since 1978. Upon graduating from medical school, Dr. Markos completed five years of residency training in general psychiatry at the University of London in the United Kingdom, and a one-year fellowship training program at the Isaac Ray Center at Rush-Presbyterian-St. Luke's Hospital in Chicago. Dr. Markos completed an additional intern program at Mount Sinai Hospital and Medical Center in Chicago. In 1986, Dr. Markos became employed by the circuit court of Cook County. Dr. Markos examined

defendant on two separate occasions, in March 1989 and April 1989, and diagnosed defendant as suffering from antisocial personality disorder. Dr. Markos concurred that defendant is a sexually dangerous person.

After the hearing, the trial judge found defendant to be a sexually dangerous person and committed him to the custody of the Illinois Department of Corrections for an indeterminate period. Defendant's timely appeal followed.

Defendant first contends that the trial court erred in refusing to ask one question of prospective jurors during *voir dire* about their opinions regarding the validity and value of psychiatric testimony. Defendant argues that the jurors' attitude towards psychiatrists and psychiatric testimony is a relevant area of inquiry similar to the nature of police officers' testimony.

■ The purpose of *voir dire* is to assure the selection of an impartial jury (*People v. Bowel* (1986), 111 Ill. 2d 58, 64, 488 N.E.2d 995), and the scope of permissible questioning during *voir dire* is properly left to the sound discretion of the trial court. (*People v. Thomas* (1990), 137 Ill. 2d 500, 548, 561 N.E.2d 57.) *Voir dire* questioning may not be used as a means for preeducating and indoctrinating prospective jurors as to a particular theory or defense or impanelling a jury with particular predispositions (*Bowel*, 111 Ill. 2d at 64; 134 Ill. 2d R. 234), nor may the questions concern matters of law or instructions. (*People v. Skipper* (1988), 177 Ill. App. 3d 684, 687, 533 N.E.2d 44.) The standard for evaluating the court's exercise of its discretion on *voir dire* is whether the means employed to test impartiality have created a reasonable assurance that prejudice would be discovered if present. *People v. Page* (1990), 196 Ill. App. 3d 285, 288-89, 553 N.E.2d 753.

■ In the present case, during *voir dire*, the trial judge informed the members of the jury venire that the court was seeking fair and impartial jurors who would be free from bias, prejudice or sympathy and inquired of each individual member whether he or she could be fair. The trial judge admonished the venire members that defendant is presumed not to be a sexually dangerous person and that this presumption is not overcome until the State proves otherwise, beyond a reasonable doubt. The trial judge properly instructed the jury on its role in assessing the weight of the evidence and ability to follow the trial court's instructions. We find that the trial judge's questioning properly assured defendant of a fair and impartial jury.

The case relied upon by defendant, *People v. Stack* (1986), 112 Ill. 2d 301, 493 N.E.2d 339, is inapposite here. *Stack* specifically ad-

dressed the defense of legal insanity. The trial judge there agreed to pose questions to the jury members regarding their attitudes toward the insanity defense "when such is involved in a case." (*Stack*, 112 Ill. 2d at 313.) The defense of insanity is not a defense in the present case. The State correctly argues that by his proposed question, defendant seeks particular kinds of jurors, rather than simply fair and impartial jurors, and that the question would serve no purpose other than to improperly attempt to preeducate and indoctrinate the jurors as to defendant's theory of the case. (*Skipper*, 177 Ill. App. 3d at 688.) Thus, we reject defendant's contention.

■ Next, defendant contends that he was prejudiced by the testimony of two of the psychiatrists who were not "qualified psychiatrists" as defined under the Sexually Dangerous Persons Act. (Ill. Rev. Stat. 1989, ch. 38, par. 105—4.) Defendant objects to the testimony of Drs. Hardy and Markos because they were not board-certified psychiatrists for five years, and to Dr. Hardy's testimony because he relied on conferrals with Dr. Cavanaugh in reaching his assessment of defendant. The State responds initially that defendant has waived this issue for review for failure to both object at trial and raise the issue in his motion for new trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) Even if the issue is not waived, defendant's contention is without merit.

Under the Sexually Dangerous Persons Act (Act), an allegedly sexually dangerous individual must be examined by two "qualified psychiatrists" who are to file a written report of their findings with the court. (Ill. Rev. Stat. 1989, ch. 38, par. 105—4.) Section 4 of the Act defines a "qualified psychiatrist" as follows:

" 'Qualified psychiatrist' means a reputable physician licensed in Illinois to practice medicine in all its branches, who has specialized in the diagnosis and treatment of mental and nervous disorders for a period of not less than 5 years." Ill. Rev. Stat. 1989, ch. 38, par. 105—4.01.

Defendant contends that the trial court erred in allowing the testimony of Dr. Hardy because he was not board certified for five years at the time of his evaluation. Dr. Hardy testified that he had been practicing psychiatry for three years at the time he evaluated defendant. The State concedes that Dr. Hardy was not a "qualified psychiatrist" under the Act at the time he examined defendant, but indicates that the Act only requires that *two* qualified psychiatrists examine a defendant and file a written report, and that the Act does not prohibit other doctors from examining a defendant or testifying at trial.

In the present case, defendant was examined by four physicians other than Dr. Hardy: Drs. Cavanaugh, Stipes, Kaplan, and Markos, and all four doctors filed written reports. Three of these doctors testified at trial that defendant was a sexually dangerous person. Where it can be concluded that retrial without the erroneous admission of challenged evidence would produce no different result, the evidence is harmless. (*People v. Arman* (1989), 131 Ill. 2d 115, 124, 545 N.E.2d 658.) Moreover, the testimony of one qualified psychiatrist is sufficient to establish a *prima facie* case, absent contradictory reports, where two doctors have examined a defendant and filed reports with the court and only one doctor testifies. (*People v. Covey* (1966), 34 Ill. 2d 195, 197, 215 N.E.2d 220.) Thus, Dr. Hardy's testimony was harmless.

Defendant further contends that Dr. Markos was not a "qualified psychiatrist" under the Act because he has only been board certified since 1987. When computing the five-year requirement for specialization in diagnosis of mental disorders, medical residences in the treatment and diagnosis of mental disorders may be taken into account. *People v. Oliver* (1975), 32 Ill. App. 3d 772, 775, 336 N.E.2d 586, *rev'd on other grounds* (1976), 63 Ill. 2d 553, 401 N.E.2d 1390.

Dr. Markos testified that at the time he examined defendant he had been a licensed physician in the State of Illinois for six to seven years. He further testified that he has been diagnosing mental disorders since 1978, and completed five years of residency training in general psychiatry, a one-year fellowship training program, and an additional intern program. Dr. Markos has been employed with the circuit court of Cook County since 1986. Taking into account Dr. Markos' residencies and training, he has been diagnosing mental disorders for 12 years. Therefore, Dr. Markos is qualified under the Act.

■ Finally, defendant contends that Dr. Hardy's testimony regarding his conferences with Dr. Cavanaugh constituted inadmissible hearsay. Dr. Hardy testified that he relied upon several of Dr. Cavanaugh's conclusions about defendant in formulating his own opinion. Although Dr. Hardy did not read Dr. Cavanaugh's notes, he conferred with Dr. Cavanaugh throughout defendant's evaluation process.

Dr. Hardy's testimony is fully admissible, as an expert may testify about facts not in evidence as long as the facts are customarily relied on by experts in the field to form opinions. (*People v. Wright* (1985), 111 Ill. 2d 128, 154, 490 N.E.2d 640; *Wilson v. Clark* (1981), 84 Ill. 2d 186, 193, 417 N.E.2d 1322.) Experts may testify as to data presented to them outside of court and other than by their own perceptions. (*Wilson*, 84 Ill. 2d at 193.) Further, a new hearing without Dr.

Hardy's testimony would not produce a different result. Accordingly, Dr. Hardy's testimony regarding his conferrals with Dr. Cavanaugh was harmless.

For the aforementioned reasons, the judgment of the trial court is affirmed.

Affirmed.

O'CONNOR and MANNING, JJ., concur.