THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v.
FRANK TEAGUE, Petitioner-Appellant.

First District (1st Division)   No. 1—90—2663

Opinion filed May 11, 1992.

Rita A. Fry, Public Defender, of Chicago (Stephen Richards and Timothy J. Leeming, Assistant Public Defenders, of counsel), for appellant.

John M. O'Malley, State's Attorney, of Chicago (Renee G. Goldfarb and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:
Petitioner Frank Teague appeals from the circuit court's dismissal of his post-conviction petition (Ill. Rev. Stat. 1987, ch. 38, par. 122—1).
We affirm.
On direct appeal in 1982, we affirmed Teague's convictions for attempted murder and armed robbery, rejecting, as is pertinent here, Teague's claims relating to the State's use of peremptory challenges during *voir dire*. Teague, who is black, was convicted by a jury com-

prised entirely of white individuals after the State used 10 of its peremptory challenges to exclude 10 black individuals from the venire. The State never denied using its challenges in that manner but offered, in partial explanation, that it was attempting to achieve a balance on the jury of individuals of like gender and age. Teague asserted that the State's use of peremptory challenges violated his sixth amendment right to a fair trial because exclusion of blacks from the venire resulted in a jury comprised of less than a fair cross-section of the community.[1] (*People v. Teague* (1982), 108 Ill. App. 3d 891, 895-96, 439 N.E.2d 1066, 1070.) The Illinois Supreme Court declined to review the matter (93 Ill. 2d 547, 449 N.E.2d 820), and the United States Supreme Court denied *certiorari* (464 U.S. 867, 78 L. Ed. 2d 179, 104 S. Ct. 206).

Teague then filed a petition for a writ of *habeas corpus* in the United States District Court for the Northern District of Illinois. Teague raised, for the first time, a contention that the State's volunteered explanation for exercising its peremptory challenges could be examined under *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, to establish purposeful racial discrimination in violation of the fourteenth amendment equal protection clause. That petition was denied, and Teague appealed to the United States Court of Appeals for the Seventh Circuit.

Initially, the court of appeals reversed the district court's denial of the petition but vacated that decision, postponing consideration of Teague's appeal, *en banc*, until the Supreme Court had decided *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, which was then pending. Following the decision in *Batson*, the court of appeals affirmed the district court decision, refusing to apply *Batson*

---

[1]This court noted that *Swain v. Alabama* (380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824) provided, at that time, a basis to question the State's use of peremptory challenges pursuant to the fourteenth amendment equal protection clause where the defendant could prove systematic exclusion of black individuals from the venire. (*Teague*, 108 Ill. App. 3d at 895-96, 439 N.E.2d at 1070.) However, Teague's argument on direct appeal relied on the decision in *People v. Payne* (1982), 106 Ill. App. 3d 1034, 436 N.E.2d 1046, later reversed (99 Ill. 2d 135, 457 N.E.2d 1202), in which Payne had raised only sixth amendment based claims. (*Teague*, 108 Ill. App. 3d at 895-96, 439 N.E.2d at 1070; see *Teague v. Lane* (7th Cir. 1987), 820 F.2d 832, 834 n. 4, 837.) Justice Simon accurately observed that the Supreme Court's holding in *Swain* had no bearing on the issues raised in *Payne*. *Payne*, like *Teague*, had only raised the sixth-amendment-based fair-cross-section contention. That argument was independent of whether the State had systematically excluded black individuals from the venire in violation of the fourteenth amendment equal protection clause. *Payne*, 99 Ill. 2d at 141, 457 N.E.2d at 1205 (Simon, J., dissenting).

retroactively. The court of appeals further determined that Teague was procedurally barred from making the contention based on *Swain* because he had failed to raise the issue at trial or on direct appeal.

On *certiorari*, a plurality of the Supreme Court affirmed the decision of the court of appeals. The Court observed that Teague had admitted that he had not raised the contention based on *Swain* until the *habeas corpus* proceedings. The resulting procedural default would bar Teague from raising the contention in collateral proceedings in Illinois courts under the Post-Conviction Hearing Act absent a determination that fundamental fairness required that the default be overlooked.[2] (*Teague v. Lane* (1989), 489 U.S. 288, 297, 103 L. Ed. 2d 334, 347, 109 S. Ct. 1060, 1068.) Noting the limited application of that doctrine, the Court concluded Teague had exhausted his State law remedies with respect to the contention based on *Swain* and denied *habeas corpus* relief on that basis. *Teague*, 489 U.S. at 298, 103 L. Ed. 2d at 347-48, 109 S. Ct. at 1068.

Justice Stevens, however, was not convinced that Illinois courts were precluded from addressing the issue. (*Teague*, 489 U.S. at 326, 103 L. Ed. 2d at 366, 109 S. Ct. at 1083 (Stevens, J., concurring).) In a concurring opinion, he noted that, because Teague's contention based on *Swain* first had been raised in the Federal *habeas corpus* proceedings, no "plain statement" had been made by any Illinois court regarding a procedural default. (*Teague*, 489 U.S. at 326, 103 L. Ed. 2d at 366, 109 S. Ct. at 1083 (Stevens, J., concurring).) Without such a disposition, the doctrine of fundamental fairness might allow the issue to be addressed despite the Supreme Court's conclusion that Teague was procedurally barred from raising the issue. *Teague*, 489 U.S. at 326, 103 L. Ed. 2d at 366, 109 S. Ct. at 1083 (Stevens, J., concurring).

Teague subsequently filed the post-conviction petition at issue here.

The question presented is a narrow one. Under principles of *res judicata*, Teague is precluded from raising, in post-conviction proceedings, issues which have been addressed pursuant to a Federal *habeas corpus* petition. (See *People v. Peery* (1982), 108 Ill. App. 3d 843, 439

---

[2]Although Illinois courts recognize fundamental fairness as a means by which to avoid the effect of a procedural default (see, *e.g., People v. Ikerd* (1970), 47 Ill. 2d 211, 265 N.E.2d 120), the doctrine escapes precise definition. At least one writer has described fundamental fairness to consist of "whatever a majority of an appellate court thinks it is in a specific case." Wangerin, *"Plain Error" & "Fundamental Fairness": Toward a Definition of Exceptions to the Rules of Procedural Default,* 29 DePaul L. Rev. 753, 766 (1980).

N.E.2d 1087.) Thus, we are not concerned directly with the merits of Teague's contention that *Swain* does not preclude examination of the State's volunteered explanation for the use of its peremptory challenges. The Supreme Court has determined that that argument is unavailable to Teague because of his failure to raise the issue at trial or on direct appeal. *Teague*, 489 U.S. at 297, 103 L. Ed. 2d at 347, 109 S. Ct. at 1067-68.

It is the nature of that failure with which we need be concerned. If the failure resulted from the ineffectiveness of Teague's trial counsel, it would be fundamentally unfair to preclude Teague the opportunity to raise the contention based on *Swain*. Although the point is acknowledged within the context of Teague's initial brief, Teague's reply openly concedes that the only remaining issue regarding the contention based on *Swain* is the issue of ineffective assistance of counsel. Defense counsel iterated the point during oral argument. That issue is properly raised pursuant to a petition for post-conviction relief. See Ill. Rev. Stat. 1989, ch. 38, par. 122—1.

Assessing the merits of Teague's claim of ineffective assistance of counsel depends largely on understanding the source of the contention. Prior to *Batson*, defendants were required to show an historical or "systematic" exclusion of black veniremen in order to assert successfully a claim of racial discrimination in jury selection founded on the equal protection clause of the fourteenth amendment. (See *Swain*, 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824.) In *Swain*, where that rule had been reaffirmed, the Court specifically noted, in deference to the nature of the peremptory challenge, that it could not "hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case." *Swain*, 380 U.S. at 222, 13 L. Ed. 2d at 773, 85 S. Ct. at 837.

In *Batson*, the Supreme Court expanded a defendant's ability to establish a claim of purposeful racial discrimination in jury selection by overruling that portion of *Swain* setting forth the necessary evidentiary showing to establish a *prima facie* case of discrimination. (*Batson*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) The Court also announced an additional analytical step, once a *prima facie* case was established, to determine whether the exercise of peremptory challenges operated to violate the equal protection clause. (*Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) The burden shifts to the prosecutor to provide race-neutral explanations for the use of peremptory challenges. (*Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) Development of that second analytical step made clear the Court had concluded that the fourteenth amendment did, in-

deed, require an examination into the prosecutor's motives in exercising peremptory challenges in a particular case, contrary to its earlier language in *Swain* quoted above.

It is Teague's misfortune, however, that the holding in *Batson* was of no direct benefit to him because of its prospective application. Teague was left without means to inquire as to the State's motives for exercising its peremptory challenges. Observing that the State's volunteered explanation was a distinguishing circumstance, and apparently encouraged by the subsequent interpretation given the equal protection clause in *Batson*, Teague here seeks to avoid the nonretroactive application of that case. Reading nothing in *Swain* to have precluded a contention that such a volunteered explanation could be scrutinized under the equal protection clause, Teague claims his counsel was ineffective for not having requested the trial judge to do so.

■ Admittedly, *Swain* cannot be read to preclude such a contention. That, however, is not the test for determining whether Teague was prejudiced by ineffective counsel. The effectiveness of Teague's counsel must be assessed against an objective standard of reasonableness from the perspective of the time of the alleged error and without hindsight. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) That standard is not met where counsel fails to assert an argument formulated after the fact with the aid of a new legal rule. (See *Smith v. Murray* (1986), 477 U.S. 527, 91 L. Ed. 2d 434, 106 S. Ct. 2661.) Yet that is the essence of Teague's argument. To accept Teague's contention would require holding that the standard for measuring effectiveness includes an element of clairvoyance such that counsel should have anticipated the holding in *Batson* and recognized *Swain* did not preclude such analysis. We are not persuaded by Teague's argument and conclude Teague did not receive ineffective assistance of counsel. Indeed, the history of the various appeals indicates that defense counsel should be commended for the efforts expended on Teague's behalf.

■ Teague also argues that the trial judge failed to adequately question the venire regarding any bias concerning the defense of insanity and the practice of psychiatry as it relates to that defense. Although Teague admits we rejected the same contentions on direct appeal (108 Ill. App. 3d at 895, 439 N.E.2d at 1069), he now argues the subsequent decision in *People v. Stack* (1986), 112 Ill. 2d 301, 493 N.E.2d 339, provides reason to conclude the trial judge's conduct deprived him of a fair trial.

In *Stack*, the supreme court held that where the defense of insanity is asserted, a defendant is entitled to ask the venire about any bias

860

or prejudice the members might have about the defense specifically. (*Stack*, 112 Ill. 2d at 313, 493 N.E.2d at 343-44.) In view of the controversial nature of that particular defense, the court concluded, a defendant's right to an impartial jury is not protected by simple inquiry into whether, as jurors, the members of the venire would follow the court's instructions on the law. *Stack*, 112 Ill. 2d at 313, 493 N.E.2d at 344.

Nothing in the holding of *Stack* is of benefit to Teague. As we noted in our previous decision, the trial judge "questioned the entire venire regarding whether there was anything about the defense of insanity which would prevent them from being fair and impartial." (*Teague*, 108 Ill. App. 3d at 894-95, 439 N.E.2d at 1069.) The questioning thus comports with the specific type of inquiry required by *Stack* and provides no basis upon which to disturb Teague's convictions.

We therefore affirm the denial of Teague's post-conviction petition.

Affirmed.

CAMPBELL and MANNING, JJ., concur.