THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES DOW, Defendant-Appellant.
First District (1st Division)   No. 1—90—1277

Opinion filed December 21, 1992.

Rita A. Fry, Public Defender, of Chicago (Denise R. Avant, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and George J. Arnold, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant James Dow was charged by indictment with three counts of delivery of a controlled substance (see Ill. Rev. Stat. 1989, ch. 56½, par. 1401). Following a jury trial at which defendant raised the defense of entrapment, defendant was found guilty of all three counts and sentenced to concurrent six-year terms in the Illinois Department of Corrections.

Defendant appeals his conviction and sentence alleging the following errors: (1) the trial court erred in failing to ask prospective jurors during *voir dire*: "Will you accept and promise to follow the law that in some circumstances excuses otherwise criminal behavior by an individual?"; (2) the State failed to rebut defendant's entrapment defense by proof beyond a reasonable doubt; and (3) the trial court prejudiced defendant's defense when it precluded him from testifying as to why he gave the drug money he received in the drug transactions to his supplier.

Prior to trial, the court read into the record the above *voir dire* question which defendant sought the court to ask of prospective ju-

rors. In denying to ask defendant's proposed question, the court reasoned that it was self-contradictory because excused conduct cannot be criminal and that it tended to indoctrinate the jury to defendant's entrapment defense.

Detective Edward Peters of the Hoffman Estates police department testified for the State that after speaking with Detective Brad Hollister, he formulated a plan to meet defendant at a Mobile gas station in Hoffman Estates. Peters arrived there in an undercover vehicle at about 3 p.m. Surveillance vehicles and officers were also at the gas station. A red pick-up truck arrived shortly after Peters' arrival, from which defendant exited. Defendant walked to Peters' vehicle and asked Peters if his name was Mike, which Peters used as his undercover name. Peters replied in the affirmative, and defendant entered his vehicle.

Peters asked defendant if he had the cocaine, and defendant produced a clear plastic bag containing one gram. Peters handed defendant $90, which defendant inserted in his pocket. Defendant told Peters that if he needed any more, he had an ounce. Peters responded that he only had enough for a gram.

On January 23, 1989, Peters called defendant at about 5:40 p.m. and asked him if he could get an "eight-ball" or one-eighth ounce of cocaine. Defendant said he would have to make a call and that Peters should call him back. When Peters telephoned again at 5:55 p.m., defendant told him that it was set for the next day at 3 p.m. at the Mobile gas station and that "it was better stuff than the last time."

On January 24, 1989, at 3 p.m., Peters went to the Mobile station in the same undercover vehicle. Defendant arrived in a Nissan. Defendant entered Peters' vehicle and produced a bag containing one-eighth ounce of cocaine. Peters handed defendant $220, which defendant placed into his pocket. Peters then asked defendant how much cocaine he could get for $3,000. Defendant replied that "he would have to check and see."

Peters called defendant on January 25, 1989. He again asked defendant how much cocaine he could get for $3,000. Defendant said he could get an ounce for $1,300. Peters accepted this price, and he and defendant agreed that Peters would call back to schedule a time and place. Peters called defendant again and the meeting was set for the next day at a Checker gas station in Barrington.

Peters went to the Checker gas station on January 26, 1989. Defendant arrived alone and told Peters that he would need the

money in advance. Peters replied that this was unacceptable, and the meeting ended.

On February 9, 1989, Peters called defendant and asked him about the ounce. Defendant said he could supply one and told Peters to meet him that same day at an apartment complex in Hoffman Estates at 12:45 p.m. Peters went to the designated location, whereupon defendant arrived in a pick-up truck. Defendant entered Peters' vehicle and asked to see the money, which Peters showed him. Defendant counted the money, thereafter giving Peters a bag containing 27.4 grams of cocaine. Peters activated his signal and the surveillance team arrested defendant. Peters stated that defendant never said that he did not want to sell any drugs to him.

Detective Brad Hollister testified that he was a detective for the Hoffman Estates police department in January 1989. Hollister was present at each of the three buys as part of the surveillance team. He testified that he saw defendant arrive and get into Peters' car on each occasion.

Officer Brian Lucas of the Hoffman Estates police department testified that he too was part of the surveillance team on February 9, 1989. He saw defendant enter Peters' car. When Peters activated the arrest signal, Lucas arrested defendant.

It was stipulated by the parties that the bag from the January 18 delivery contained one gram of cocaine; that the bag from the January 24 delivery contained 3.4 grams of cocaine; and that the bag from the February 9 delivery contained 27.4 grams of cocaine.

Defendant testified on his own behalf. In January 1989 he was 19 years old. Defendant admitted that he sold cocaine to Peters in 1989 on January 18, January 24 and February 9. Defendant sold the cocaine because he was hooked on it and thought it would be a good way to get some more cocaine. Defendant's supplier was Mark Smith, a friend of his.

Peters called defendant and asked him if he could get him some cocaine. Defendant was hesitant at first but agreed because he thought he could "get some free coke out of it."

Prior to January 18, 1989, defendant had never sold cocaine before. Defendant gave the money from the January 18 sale to Mark Smith. Smith had been supplying defendant with drugs. Smith was the one who drove defendant to the meeting places. Before the January 18 meeting, another meeting with Peters was scheduled, but defendant did not go because he had a "gut feeling about it." Peters kept calling him, so he just sold the cocaine to get Peters off his back and to get some coke for himself.

Defendant admitted doing four to five grams of cocaine a week. A gram cost about $100. Defendant was earning about $300 to $350 a week at his job. Defendant was paying rent to his parents. Defendant never said to Peters that he did not want to sell drugs.

The jury found defendant guilty of all three delivery charges. Defendant was sentenced to three six-year terms, running concurrently. Defendant brings this appeal.

Defendant first contends on appeal that the trial court denied him a fair trial when it refused to ask prospective jurors the following question, read into the record as follows: "Will you accept and promise to follow the law that in some circumstances excuses otherwise criminal behavior by an individual?"

Supreme Court Rule 234 governs *voir dire* examination of prospective jurors:

> "The court shall conduct the *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate touching their qualifications to serve as jurors in the case on trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, or may permit the parties to supplement the examination by such direct inquiry as the court deems proper. Questions shall not directly or indirectly concern matters of law or instructions. The court may acquaint prospective jurors with the general duties and responsibilities of jurors." 134 Ill. 2d R. 234.

■■ The purpose of *voir dire* is to assure the selection of an impartial jury. (*People v. Howard* (1991), 147 Ill. 2d 103, 133, 588 N.E.2d 1044, *cert. denied* (1992), ___ U.S. ___, 121 L. Ed. 2d 154, 113 S. Ct. 215; *People v. Chamness* (1984), 129 Ill. App. 3d 871, 873, 473 N.E.2d 476.) Rule 234 was promulgated to shorten *voir dire* by eliminating that portion of the process which did not advance the legitimate ends of impaneling an impartial jury. (*People v. Stack* (1986), 112 Ill. 2d 301, 311, 493 N.E.2d 339, *cert. denied* (1986), 479 U.S. 870, 93 L. Ed. 2d 162, 107 S. Ct. 236.) The rule is aimed at this specific evil since " 'no reason is perceived for questioning [prospective jurors] as to legal principles or concepts beyond ascertaining whether or not they are willing to accept and follow the instructions concerning the *law of the case*.' (Emphasis added.)" *Stack*, 112 Ill. 2d at 311, quoting *People v. Lobb* (1959), 17 Ill. 2d 287, 302, 161 N.E.2d 325.

■ Circuit courts have broad discretion in conducting and managing *voir dire* under Rule 234, and the decision to ask certain

questions of prospective jurors is within this discretion. (*Chamness*, 129 Ill. App. 3d at 873; *People v. Kendricks* (1984), 121 Ill. App. 3d 442, 459 N.E.2d 1137.) *Voir dire* questioning may not be used as a means for preeducating and indoctrinating prospective jurors as to a particular theory or defense or impanelling a jury with particular predispositions, nor may the questions concern matters of law or instruction. (*Chamness*, 129 Ill. App. 3d at 873; *Kendricks*, 121 Ill. App. 3d at 448-49.) A reviewing court will not find that the trial court abused its discretion during *voir dire* where the questions posed and the procedures employed created a reasonable assurance that any prejudice or bias would be discovered. *People v. Lanter* (1992), 230 Ill. App. 3d 72, 75, 595 N.E.2d 210; *People v. Faulkner* (1989), 186 Ill. App. 3d 1013, 1027, 542 N.E.2d 1190; *People v. Brandon* (1987), 157 Ill. App. 3d 835, 841, 510 N.E.2d 1005, *appeal denied* (1987), 116 Ill. 2d 563, 515 N.E.2d 114.

One of the leading cases discussing affirmative defense oriented *voir dire* is *People v. Stack* (1986), 112 Ill. 2d 301, 493 N.E.2d 339. In *Stack*, our supreme court held that a defendant should be allowed to identify and challenge those prospective jurors who would refuse to follow the statutory law on the insanity defense. (*Stack*, 112 Ill. 2d at 313.) The rejected question in *Stack* provided: "Do you have any feeling or viewpoint concerning the defense of insanity in a criminal case? If so, what?" (*Stack*, 112 Ill. 2d at 310.) This question was found not to violate Rule 234 because it sought to determine only whether the prospective jurors would be biased against an insanity defense. (*Stack*, 112 Ill. 2d at 311.) Since the question did not attempt to state the law but merely probed for bias, it could not be faulted for containing argumentative and misleading statements of law, the abusive practice which Rule 234 put to rest. *Stack*, 112 Ill. 2d at 311.

To support its conclusion, the court in *Stack* referred to its prior case of *People v. Wright* (1985), 111 Ill. 2d 128, 490 N.E.2d 640, in which the court approved of the State's asking prospective jurors whether they could impose the death penalty in an appropriate case. The court also referred to *Schneider v. Kirk* (1967), 83 Ill. App. 2d 170, 226 N.E.2d 655, which allowed attorneys in dramshop cases to ask prospective jurors whether they disagreed with the dramshop statute. The court in *Stack* observed as a common thread running through these cases: "the jury was going to be asked to apply an extraordinarily controversial legal requirement against which many members of the community may have been prejudiced. Inquiry into the feeling or viewpoint of the venire regarding such con-

troversial legal propositions is consistent with a *bona fide* examination conducted so that the parties can intelligently exercise their prerogatives to challenge." (*Stack*, 112 Ill. 2d at 312.) The court in *Stack* went on to find that, because an insanity defense is itself the "subject of intense controversy," simply asking the jury whether it could faithfully apply the law as instructed was insufficient to fetter out juror bias and prejudice toward the defense. *Stack*, 112 Ill. 2d at 313.

Apart from the insanity defense, *voir dire* questions particularized towards other criminal defenses have been generally disallowed. (See *People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68 (mistaken identity); (*People v. Phillips* (1981), 99 Ill. App. 3d 362, 425 N.E.2d 1040 (compulsion); (*People v. Dunum* (1989), 182 Ill. App. 3d 92, 537 N.E.2d 898, *appeal denied* (1989), 127 Ill. 2d 625, 545 N.E.2d 118; *People v. Skipper* (1988), 177 Ill. App. 3d 684, 533 N.E.2d 44, *appeal denied* (1988), 125 Ill. 2d 572, 537 N.E.2d 817; *People v. Kindelan* (1986), 150 Ill. App. 3d 818, 502 N.E.2d 422, *appeal denied* (1987), 114 Ill. 2d 553, 508 N.E.2d 733, *vacated on other grounds* (1991), 213 Ill. App. 3d 548, 572 N.E.2d 1138; *People v. Kendricks* (1984), 121 Ill. App. 3d 442, 459 N.E.2d 1137 (self-defense).) However, the fourth district recently reversed and remanded a case for the circuit court's failure to ask the following propounded question on the intoxication defense: "[D]o any of you have any feelings concerning the use of alcohol or drugs which could affect your ability to be a juror in this case ***." *People v. Lanter* (1992), 230 Ill. App. 3d 72, 73, 595 N.E.2d 210.

■ In this case, we do not address whether the defense of entrapment is so controversial and extraordinary that a new trial is warranted in situations where the trial court refuses to ask entrapment-oriented *voir dire* questions. Rather, we elect to affirm the circuit court's rejection of defendant's question based on the question itself. First, the question seeks to indoctrinate the jury towards finding entrapment rather than probing for bias or prejudice regarding the defense. To the extent particularized defense questions have been allowed, their format has been very open ended. Both *Stack* and *Lanter* had this format in common, as did the question in another case upon which defendant relies (see *People v. Davis* (1983), 95 Ill. 2d 1, 447 N.E.2d 353, *cert. denied* (1983), 464 U.S. 1001, 78 L. Ed. 2d 697, 104 S. Ct. 507), while the proposed question in this case does not.

Second, the question is misleading in that it seeks to label defendant's conduct as "otherwise criminal" if an entrapment is

found to exist. A successful entrapment defense, however, makes the act in question noncriminal. See Ill. Rev. Stat. 1989, ch. 38, par. 7—12 ("A person is *not guilty* of an offense if \*\*\*"). (Emphasis added.)

Finally, the question makes no sense on its face. Words are apparently missing. We believe it proper that the court disallowed defendant from asking a question that may have only confused the jury. For these reasons, we affirm the circuit court's rejection of defendant's tendered question.

■ We next address whether the State failed to rebut defendant's entrapment defense beyond a reasonable doubt. Defendant's entrapment defense is predicated upon section 7—12 of the Criminal Code of 1961:

"A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated." (Ill. Rev. Stat. 1989, ch. 38, par. 7—12.)

Once a defendant raises entrapment as an affirmative defense and presents some evidence thereon, the State is required to prove, in addition to each of the statutory elements of the offense, the absence of entrapment beyond a reasonable doubt. Ill. Rev. Stat. 1987, ch. 38, par. 3—2.

In *People v. Boalbey* (1986), 143 Ill. App. 3d 362, 364-65, 493 N.E.2d 369, this court explained the entrapment defense:

"In Illinois, entrapment occurs when the criminal design originates with the State officers who implant in the mind of an innocent person the disposition to commit the alleged offense and who induce its commission in order that they may prosecute. The principal element of the defense of entrapment is the defendant's lack of disposition to commit the crime. The fact the State's officers or employees merely afford opportunities or facilities for the commission of an offense does not defeat the prosecution and the State's deception brings the defense of entrapment into play only when the deception actually implants the criminal design in the defendant's mind. [Citations.]

The question involves two issues, inducement and predisposition, and the defendant has the burden of proving that

the State induced him to commit a criminal act; if he so proves, then the burden is on the State to prove the defendant was ready and willing to commit the crime without persuasion, that is, that he had a predisposition to commit the crime (Ill. Rev. Stat. 1983, ch. 38, par. 3—2)."

The standard of review when the sufficiency of the evidence is challenged on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rationale trier of fact could find the essential elements of the crime beyond a reasonable doubt. (*People v. Furby* (1990), 138 Ill. 2d 434, 455, 563 N.E.2d 421.) Determinations of the credibility of the witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact. *Furby*, 138 Ill. 2d at 455.

■ In this case, the State rebutted defendant's entrapment defense with proof beyond a reasonable doubt. Defendant's reluctance to sell the drugs to Peters was minimal. Defendant never told Peters that he did not want to sell cocaine. Defendant, an admitted cocaine user, saw the opportunity to sell cocaine as a method by which to obtain more. Peters testified that after the first sale, defendant told him that he could obtain more if needed. On the second sale, defendant told Peters that this cocaine was better than what Peters purchased last time. As for each sale, while Peters called defendant to initiate the sale, defendant was able to quote Peters a price after making a telephone call. Having no car of his own, defendant arranged transportation to the meeting place.

The above evidence entitled the jury to find defendant guilty. While Peters initiated each sale with a telephone call, defendant accommodated Peters' needs with little or no resistance. Defendant's motive to sell was his own desire to obtain free cocaine. Under the applicable standard of review, we affirm the jury's finding of guilt.

■ Defendant finally contends that an evidentiary ruling by the circuit court operated to deny him a fair trial by limiting his ability to demonstrate that he was entrapped. During defendant's direct examination, counsel asked defendant what he did with the cocaine money which Peters had given him. Defendant replied that the money was given to his supplier. Counsel then sought to ask why the money was so given, but the State's objection was sustained on the grounds of relevancy. Defendant made no offer of proof on the issue.

It is within the discretion of the trial court to decide whether evidence is relevant and admissible, and its decision will not be re-

versed absent a clear abuse of discretion resulting in manifest prejudice to defendant. (*People v. Hayes* (1990), 139 Ill. 2d 89, 130, 564 N.E.2d 803, *cert. denied* (1991), 499 U.S. 967, 113 L. Ed. 2d 664, 111 S. Ct. 1601.) Here, the court's action resulted in no manifest prejudice to defendant. Defendant was given the clear opportunity to convey the gist of his entrapment defense to the jury, but the jury nevertheless rejected it. The omitted testimony, if allowed, would have added little to defendant's case. Thus, the court's ruling did not manifestly prejudice defendant's case.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.