FIRST DIVISION

June 30, 2000

No. 98-4382

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County

)

)

)

DAVID GREGG, ) 

) Honorable

Defendant-Appellant. ) James D. Egan

) Judge Presiding.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

On August 31, 1994, defendant delivered 1,964 grams of cocaine to an undercover police officer in exchange for $4,500.  He was arrested and charged with delivery of a controlled substance.  At trial, defendant raised the defense of insanity.  Following a jury trial, David Gregg, was found guilty of delivery of a controlled substance greater than 900 grams of cocaine.  The trial court sentenced defendant to 16 years in the Illinois Department of Corrections.  On appeal, defendant contends: (1) the trial court erred in denying defense counsel's request for the court to inform the jury during 
voir dire
 of the defendant's burden of proof for an insanity defense; (2) the trial court improperly denied defendant's motion for a mistrial based on the State's purposeful subterfuge; (3) the trial court erred in allowing the second paragraph of Illinois Pattern Jury Instructions, Criminal, No. 24-25.01 (2d ed. 1981) to be submitted; (4) the trial court erred in not sustaining defendant's objection to the opinion of the State's expert as to the issue of defendant's sanity or insanity; and (5) the trial court abused its discretion in denying defendant's motion to reduce his sentence.  We reverse and remand for a new trial.

I. Motion in Limine

Prior to the jury selection, the State filed a motion
 in limine
 to exclude the affirmative 

defense of insanity from being presented by the defense.  The State argued that the reports from Dr. Larry Heinrich and Dr. Marvin Schwarz did not provide the factual
 predicate to establish that a good-faith affirmative defense existed.
  
In response, defense counsel stated that the State had the reports in its possession for approximately three years and that the motion
 in limine
 had been filed on the eve of jury selection.  Defense counsel further pointed out that an additional report by Dr. Schwarz was prepared in 1998, which explained his 1995 report and established the requisite factual predicate for the defense of insanity.  In the 1998 report, Dr. Schwarz indicated that he would testify to the fact that defendant suffered from insanity at the time of the commission of the crime.  The trial court denied the State's motion
 in limine
.

II. 
Voir Dire

During 
voir dire
, a potential juror asked defense counsel whether the standard upon which she should base her opinion of the credibility of the expert witnesses was beyond a reasonable doubt.  Defense counsel requested a side bar and asked the trial court to inform the potential jurors that the burden of proof for a defendant raising an insanity defense is proof by a preponderance of the evidence.  
The trial court denied the request and stated that the jurors would be instructed as to the defendant's burden at the close of the trial.

At the close of the 
voir dire
, the trial court informed the jurors that a defendant is presumed innocent of the charge against him and that the State has the burden of proving the guilt of the defendant beyond a reasonable doubt.
  
The trial court made no mention of the fact that under the applicable law the defendant had the burden of proof of insanity by a preponderance of the evidence for purposes of a not guilty by reason of insanity verdict.  720 ILCS 5/3-2(b), 6-2(e) (West 1994).  
The trial court also instructed the jury on 
voir dire
 that the defendant is not required to prove his innocence nor is he required to present any evidence on his own behalf but, rather, that he may simply rely on his presumption of innocence.
  
Finally, the trial court asked the potential jurors whether they understood the burden of proof involved in a criminal case and whether they would be able to return a verdict of not guilty if they determined that the State had not met its burden of proof beyond a reasonable. 

III. Trial Testimony

At trial, defendant raised the defense of insanity. 
 
During the State's case in chief, Detective Sebesta testified about his investigation and the arrest of Todd Rogers.  This arrest ultimately led Detective Sebesta to Chicago and to the defendant.  Todd Rogers testified that he had previously purchased cocaine from defendant in May 1994 and that defendant was one of his sources for obtaining cocaine.  

In July 1994, before defendant was arrested, Detective David Sebesta, an undercover police officer, purchased cocaine from Todd Rogers on two occasions.  Rogers was arrested on July 19, 1994 and agreed to cooperate with the police in investigating other cocaine-related crimes.  He informed the police that defendant was one of his sources and that he had met defendant in May 1994, in Chicago, when he purchased cocaine from him.

As part of his agreement to cooperate with the police, Rogers phoned defendant in July 1994 and arranged to purchase two kilos of cocaine from him.  Ten to twelve of the conversations that Rogers had with defendant were tape-recorded by the police.  Rogers and defendant arranged to meet in Chicago, on August 31, 1994.  Detective Sebesta and Rogers drove to Chicago where Detective Sebesta dropped Rogers off at a McDonald's restaurant.  Rogers was then picked up by Officer Zeman, an undercover Illinois State Police officer, and was driven to defendant's house.  

On August 31, 1994, Carmen Ritacco delivered a white bucket containing two kilos of cocaine to defendant's house.  Officer Garcia watched as Ritacco parked his car in front of defendant's house. Defendant came out of the house, walked to the passenger side door, bent down and spoke to Ritacco.  Ritacco then handed defendant a white painters bucket containing the cocaine and drove off.  Defendant walked back into his house.

When Rogers and Officer Zeman arrived at defendant's house, Officer Zeman waited in the car while Rogers went into defendant's house to inspect the cocaine.  Inside the house, Rogers met with defendant and inspected the cocaine.  The cocaine had been wrapped in plastic and duct tape and placed in a white painters bucket.  Defendant told Rogers that the cocaine was very good and that it was the same type that Rogers had purchased from defendant previously.  After reconfirming that the price of the cocaine was $4,500,
 
Rogers went back outside to get the money from Officer Zeman.  However, Officer Zeman was reluctant to hand the money over to Rogers. 

Instead, defendant walked out to Officer Zeman's car, carrying the white bucket of cocaine.  Defendant then got into Officer Zeman's car and Officer Zeman looked in the bucket.  He cut open one of the packages and confirmed that it was cocaine.  After examining the cocaine, Officer Zeman got out of the car and went to retrieve the money in the truck of the car.  While Officer Zeman stood at the truck of the car, Chicago police officers arrived and arrested defendant.

Defendant presented testimony from Dr. Marvin Schwarz, a psychiatrist and attorney.
  
Dr. Schwartz testified that he examined defendant in May 1995 and that he reviewed reports from Dr. Heinrich and other doctors who examined defendant.  
The purpose of the evaluation was to determine defendant's sanity at the time of the commission of the criminal acts from May 1994 through August 1994.

Dr. Schwartz stated that, following a car accident in 1992, defendant was unable to deal with his injuries and was unable to function.  He diagnosed defendant as having major depression with psychotic features.  He further stated that defendant's psychotic-like features contributed to his criminal activity because there was a breakdown of 
 
defendant's controls and his sense of values.  As a result of this breakdown, defendant lacked the capacity to conform his conduct to the requirements of the law.
  
Dr. Schwartz concluded that although defendant appreciated the criminality of his conduct, defendant was, nonetheless, legally insane at the time of his criminal activity.  In his opinion, defendant lacked the capacity to conform his conduct to the requirements of the law as a result of a mental disease or defect.

On cross-examination, the State asked Dr. Schwartz questions regarding the supplemental report he prepared in October 1998.  In his report dated August 1995, Dr. Schwartz did not state that he found defendant to be psychotic or that defendant was legally insane.  However, in the 1998 report, Dr. Schwartz stated that defendant met the psychiatric criteria for legal insanity.  Defense counsel objected to the State's use of the 1998 document during cross-examination and moved the trial court for a mistrial.  In argument to the trial court, defense counsel explained that it was his belief that the supplemental report was prepared at the request of the State with the understanding that the State would not proceed with its motion 
in limine
 if Dr. Schwartz clarified that he was prepared to testify that defendant met the legal definition of insanity.  Defense counsel further argued that the State used subterfuge to get the defendant to produce the supplemental document. 

The State responded that it had never asked for a clarification of the witness' testimony but, rather, that it had informed defense counsel that the witness' testimony was insufficient as a matter of law to establish the defense of insanity.  The State further indicated that defense counsel was told that, if he had some other proffer, he could proceed with that.  After hearing argument from both sides, t
he trial court denied defendant's motion for a mistrial.

In rebuttal, the State called Dr. Roni Seltzberg, a forensic psychiatrist, to testify.  Dr. Seltzberg interviewed defendant on January 27, 1998, for the purpose of rendering an opinion regarding defendant's mental state or sanity at the time of the commission of the crime.
  
Dr. Seltzberg testified that, at the time of the offense, defendant was not suffering from a severe mental illness that would have resulted in his lacking substantial capacity to either appreciate the criminality of his conduct or conform his conduct to the requirements of the law.  She concluded that defendant was legally sane at the time he committed the offense.
  
Dr. Seltzberg further stated that her opinion was entirely different from Dr. Schwartz's in that she did not find that defendant was legally insane at the time of the commission of the offenses or that he had ever been psychotic or delusional.    

Following the testimony of the witnesses, the jury found defendant guilty of delivery of a controlled substance greater than 900 grams of cocaine.
  
After hearing and considering arguments in both aggravation and mitigation,
 
the trial court sentenced defendant to 16 years in the Illinois Department of Corrections.

IV. ANALYSIS

A. 
Voir Dire

At trial defendant conceded that he committed the act of delivery of a controlled substance greater than 900 grams, but he relied on the affirmative defense of insanity.  Defendant further limited the issues by conceding that he understood the criminality of his acts.  Therefore, the only issues at trial were whether defendant suffered from a mental disease or defect at the time he committed the acts and whether defendant could conform his conduct to the requirements of the law.  On appeal, defendant argues that the trial court committed reversible error by refusing  defense counsel's request that the court inform the jury during 
voir dire
 of defendant’s burden of proof for the affirmative defense of  insanity.  As such, defendant maintains that his sixth and fourteenth amendment constitutional rights to an impartial jury and due process were violated.  U.S. Const., amends. VI, XIV.

We first turn to a brief overview of  
voir dire
.
  Voir dire
 serves the dual purpose of enabling the trial court to select jurors who are free from bias or prejudice and ensuring that attorneys have an informed and intelligent basis on which to exercise their peremptory challenges.  
People v Clark
, 278 Ill. App. 3d 996, 1003 (1996).  The right to a jury trial guarantees a fair trial by a panel of impartial jurors.  
People v. Mitchell
, 121 Ill. App. 3d 193 (1984).  It is well established that limitation of 
voir dire
 questioning may constitute reversible error where such limitation denies a party a fair opportunity to probe an important area of potential bias or prejudice among prospective jurors. 
 People v. Stack
,
 
112 Ill. 2d 301, 312-13 (1986).  
The primary responsibility of conducting the 
voir dire
 examination lies with the trial court, and the manner and scope of such examination rest within the discretion of the trial court.  
People v. Terrell
, 185 Ill. 2d 467, 484 (1998).  Indeed, the trial court possesses great latitude in deciding what questions to ask during 
voir dire
.  
Terrell
, 185 Ill. 2d at 484
.  

When insanity is an issue, the parties have a right to examine jurors concerning their attitudes on an insanity defense.  
People v. Robinson
, 102 Ill. App. 3d 884 (1981). 
 
A defendant’s sixth and fourteenth amendment rights to an impartial jury are diminished when jurors are prejudiced against an appropriate verdict of not guilty by reason of insanity.  
Stack
, 112 Ill. 2d at 312-13. No precise technical test or formula exists for determining whether a prospective juror is impartial.  
People v. Washington
, 104 Ill. App. 3d 386, 390 (1982)  On review, an abuse of discretion will be found only when the record reveals that the selection of an impartial jury was thwarted.  
People v. Williams
, 164 Ill. 2d 1, 16 (1994).  The standard for evaluating the court’s exercise of discretion is whether the questions and the procedures used during 
voir dire
 to gauge juror competency created a reasonable assurance that any prejudice or bias present would be discovered.  
People v. Diggs
, 243 Ill. App. 3d 93, 96 (1993).

           Prior to 1997, Supreme Court Rule 431 (177 Ill. 2d R. 431), which governs the voir dire examination of jurors in criminal trials, provided that such examination would be conducted in accordance with Supreme Court Rule 234 (177 2d R. 234).  Prior to 1997, Supreme Court Rule 234 stated as follows:  

            "The court shall conduct the voir dire examination of prospective jurors by putting

to them questions it thinks appropriate about their qualifications to serve as jurors in the case on trial.  The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, or may permit the parties to supplement the examination by such direct inquiry as the court deems proper.  Questions shall not directly or indirectly concern matters of law or instructions.  The court may acquaint prospective jurors with the general duties and responsibilities of jurors."  (Emphasis added.)  103 Ill. 2d R. 234.  

Effective May 1, 1997, Rule 431 was amended.  The amended Rule 431 provides that the court "shall" rather than "may" acquaint prospective jurors with the general duties and responsibilities of jurors.  New subsection (b) was also added.  It provides as follows:

"If requested by the defendant, the court shall ask each potential juror, individually

or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charges(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.  The court's method of inquiry shall provide each juror with an opportunity to respond to specific questions concerning the principles set out in this section."  177 Ill. 2d R. 431(b).

These amendments to Rule 431 concerning 
voir dire
 examination were based on a 1989 report prepared by the Illinois Supreme Court Committee on Implementation of Jury Standards and on a 1996 proposal of the criminal rules subcommittee.  Illinois Supreme Court Committee on Implementation of Jury Standards, Illinois Standards Relating to Juror Use and Management 8 (June 5, 1989).  In amending Rule 431, the Illinois Supreme court criminal rules subcommittee was primarily focused  "upon seeking compliance with the requirements established in 
People v. Zehr
, that prospective jurors be examined concerning their understanding and acceptance of fundamental principles, such as the presumption of innocence and the standard and burden of proof in criminal cases."  M. Toomin, 
Jury Selection in Criminal Cases: Illinois Supreme Court Rule 431 - A Journey Back to the Future and What It Portends
, 48 DePaul L. Rev. 83, 91 (1998)(Judge Michael P. Toomin  participated in drafting amended Rule 431 as a member of the Illinois Supreme Court criminal rules subcommittee);  
People v. Zehr
, 103 Ill. 2d 472 (1984).

            It is the examination of prospective jurors concerning their understanding and acceptance of the fundamental principles of the standard and burden of proof in a criminal insanity case that is at issue in this case. Generally the standard of proof in a criminal case is proof beyond a reasonable doubt and the burden of proof is on the State. When a defendant raises an affirmative defense of insanity, in addition to imposing a burden of proof beyond a reasonable doubt on the State, the law imposes a burden of proof on the defendant and imposes a lesser standard of proof on defendant than on the State.  Initially, the insanity statute provided that, in order to raise the affirmative defense of insanity, the defendant “must present some evidence thereon.”  Ill. Rev. Stat. 1979, ch. 38, par. 3-2(a); see 
People v. Silagy
, 101 Ill. 2d 147, 168 (1984).  That statute provided that if the defendant introduced evidence sufficient to raise the affirmative defense, the State must sustain the burden of proving the defendant guilty by establishing beyond a reasonable doubt that the defendant was sane at the time of the offenses.  Ill. Rev. Stat. 1979, ch. 38, par. 3-2(b); 
Silagy
, 101 Ill. 2d at 168.  The statute was then amended to require that the burden of proof on the defendant is to prove "by a preponderance of the evidence that the defendant is not guilty by reason of insanity," and it is that statute which applies to this case providing as follows: 

"(a) A person is not criminally responsible for conduct if at the time of such

conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

* * *

 (e)When the defense of insanity has been presented during the trial, the burden of

proof is on the defendant to prove by a preponderance of the evidence that the defendant is not guilty by reason of insanity.  However, the burden of proof remains on the State to prove beyond a reasonable doubt each  of the elements of each of the offenses charged***. "  720 ILCS 5/6-2(a), (e) (West 1994).

We note that this statute was amended, and in addition to other changes not relevant to this discussion, required that a defendant prove that he is not guilty by reason of insanity by "clear and convincing evidence."  720 ILCS 5/5-2(e)(West 1998).  Under either the current or pre-amended versions of the statute, however, "the burden of proof remains on the State to prove beyond a reasonable doubt each of the elements of each of the offenses charged."  720 ILCS 5/6-

2(e) (West 1994 & 1998).  

We now turn to review the situation before us. 
 We have found no case in Illinois which addresses the specific issue of whether the prospective jurors in an insanity case should be informed on 
voir dire
 of the standard and burden of proof imposed on defendant by law.  In 
Zehr 
our supreme court defined the basic guarantees of which jurors in criminal cases must be informed during 
voir dire
.  
Zehr
, 103 Ill. 2d at 477.  
Zehr
 was not an insanity case and although 
Zehr
 
does not specifically address the issue of informing prospective jurors about the defendant's burden of proof in an insanity case, it also does not limit the court in 
voir dire 
in answering additional questions that may arise from the subject matter of the basic guarantees it recognizes.  In fact, Zehr cautions against such limitation, recognizing
 that when questions go to the heart of a particular bias or prejudice, the subject matter of the questions should be covered in the course of interrogation on 
voir dire
.  
Zehr
, 103 Ill. 2d at 477.  

In this case, both the defense and the State intended to produce testimony from expert witnesses.  Defense counsel, during 
voir dire
, asked a question of a potential juror in order to discover how the juror would determine the believability of the expert witness testimony and evaluate the expert opinion testimony.  As a result of that question, the juror wanted to know whether reasonable doubt was the standard for assessing the credibility and for evaluating expert witness testimony.  That inquiry by the juror prompted defense counsel to request that the trial court inform the jury that the defendant had the burden of proof by a preponderance of the evidence that defendant was not guilty by reason of insanity.  Thus, the question from the prospective juror raised the issue of the different burdens of proof imposed by law on the prosecution and defendant in the context of an insanity case.
  It was the following exchange which triggered defense counsel’s request of the trial court to inform the potential jurors that the defense also had a burden of proof:

"DEFENSE: Anything in the hospital setting that would prevent you from giving us a fair and impartial trial?

JUROR: No, except that I have seen how drugs can change a person both for the better and the worse.

DEFENSE: And let me say this.  So, in other words, you do have some knowledge of mental illness and that you're suggesting a   possibility that it's drug associated, but there is a broad spectrum of mental illness that could be caused by various things as I'm sure you have learned.

JUROR: Yes.

DEFENSE: So there is nothing in that, there is nothing to suggest that given expert testimony, listening to these witnesses,       would you draw your own conclusion as to who you feel is the believable witness or  the person who you thought was * * * whose opinion you could value?

JUROR: Beyond a reasonable doubt?"

After this exchange took place defense counsel requested a side bar and asked the trial court to inform the jurors that the law imposed a burden of proof on defendant and that this burden was "proof by a preponderance of the evidence that defendant is not guilty by reason of insanity."  The State objected on the basis that the jury did not need to be instructed on the defendant's burden of proof during 
voir dire
.  The trial court agreed with the State, indicating that the burden of proof would be discussed at the end of the trial.  However, the trial court during 
voir dire
 did inform the jurors of the State's burden of proof.  The trial court also asked each juror whether he or she understood the burden of proof in criminal cases and whether he or she could return a verdict of not guilty if the State did not prove defendant's guilt beyond a reasonable doubt.  Contrary to defense counsel's request during 
voir dire
, the jury was not told that the defendant had a burden of proof and the jury was not told that the law imposed a burden of proof by a preponderance of the evidence on defendant. 
  During 
voir dire
 the potential jurors were not asked whether they could follow the law which imposed a burden of proof by a preponderance of the evidence on the defendant.

Both the State and defense rely on 
Zehr
.  In 
Zehr
 our supreme court defined the basic guarantees of which jurors in criminal cases must be informed during 
voir dire
. 
 Zehr
, 103 Ill. 2d at 477.  The supreme court held that jurors during 
voir dire
 must be informed that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proven guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him.  
Zehr
, 103 Ill. 2d at 477.  The supreme court concluded that the trial court erred when it refused the defendant's request to ask prospective jurors whether they understood that a defendant was presumed innocent. The supreme court rejected the State's argument that the jury instructions adequately advised the jury concerning these basic guarantees, agreeing with the defendant that the questions were essential to the qualifications of a juror and that instructions at the end of a trial would have little curative effect on a juror who held a prejudice against those basic rights of the defendant.
  
Zehr
, 103 Ill. 2d at 466- 477.

Defendant contends that under the reasoning set forth in 
Zehr
, where the defendant has a burden of proof,  it is essential that potential jurors be informed as to that burden and questioned as to any prejudices or biases they might have as to that burden.  Defendant further argues that the trial court's instructions about defendant's burden of proof at the close of the case did not cure any prejudice a juror may have had from the outset of the trial.  The State relies on 
Zehr
 to support its position that the basic guarantees enumerated in 
Zehr
 do not include a requirement that the trial court during 
voir dire
 inform potential jurors that defendant has a burden of proof in an insanity case.

By including the burden of proof as a basic guarantee which should be discussed with potential jurors on 
voir dire
, we believe the court in 
Zehr
 recognized that questions regarding the burden of proof should be answered in the course of interrogation on 
voir dire
. Zehr, 103 Ill. 2d at 476.  The burden of proof on the defendant in an insanity case falls within the scope of the subject matter enumerated by the basic guarantees recognized in 
Zehr
.  Moreover, in this case the burden of proof was the subject of direct inquiry by a prospective juror during 
voir dire
.  In an insanity case the law imposes a burden of proof on the defendant and to limit questioning of potential jurors as to the burden as it applies only to the State incompletely explores the subject matter 
of the burden of proof which 
Zehr
 recognizes as one of the basic guarantees that should be discussed with potential jurors. 

The reason the court in 
Zehr
 identified specific guarantees which should be the subject of questioning on 
voir dire
 was because the court recognized that the defendant has the right to discover prejudice or bias in areas which are basic to affording the defendant a fair trial process. 
 Zehr
, 103 Ill. 2d at 477.  Without discussion of the basic guarantees during 
voir dire, 
if a juror has a prejudice against any of the guarantees, an instruction at the end of the trial will have little curative effect.  
Zehr
, 103 Ill. 2d at 477. 
 Two recent supreme court cases apply the 
Zehr
 analysis in addressing what basic guarantees should be discussed during 
voir dire
 in the context of the defendant's right to discover bias or prejudice.  We find these cases instructive.

In 
People v. Buss
, 187 Ill. 2d 144 (1999), the defendant argued he should have been allowed to ask prospective jurors, "If any one of you were against death, could you so vote alone and stop the entire proceeding. Would you be able to stand alone in this way?"  And, similarly, in 
People v. Macri
, 185 Ill. 2d 1 (1998), the defendant wanted to ask potential jurors about their ability to vote against the death penalty in the event all the remaining jurors voted otherwise.  The supreme court rejected these arguments and held that such questions concerning a juror's ability to vote alone against the death penalty were more appropriately covered by jury instructions and did not involve the basic guarantees of which jurors must be informed during 
voir dire
 as required by 
Zehr
. 
 Buss
, 187 Ill. 2d at 183. 

In both
 
Buss 
and 
Macri
 our supreme court concluded that jurors were given clear

instructions concerning the unanimity requirement for the death penalty and therefore "stand alone" questions on 
voir dire
 were not required as they did not fall within the basic guarantees enumerated in 
Zehr
.  
However, in 
Macri
, the supreme court, citing 
Zehr
, indicated that prospective jurors should be examined on 
voir dire
 to determine the existence of prejudice against the presumption of innocence, the standard of proof and the right of a defendant not to testify.  In 
Macri, 
the supreme court stated
 
that no correlation existed between the proposed questions and the defendant's asserted goal of detecting bias or prejudice where the defendant sought to ask potential jurors questions concerning their ability to vote against the death penalty.  
Macri
, 185 Ill. 2d at 36
.

U
nlike 
Buss 
or 
Macri
, here, a direct correlation exists between the question proposed by defense counsel, regarding defendant's burden of proof and the defendant's goal of detecting bias or prejudice.  If, for example, a juror has a prejudice against the basic proposition that the defendant bears the burden of proof of  insanity by only a preponderance of the evidence in an insanity case, while the State has the greater burden of proving defendant's guilt beyond a reasonable doubt, then the defendant is denied his right to a fair and impartial jury from the outset of the trial when precluded from discovering this bias or prejudice.  The subject matter of the burden of proof is recognized in 
Zehr
 as a basic guarantee which prospective jurors should be questioned about to determine prejudice.  
Zehr
, 103 Ill. 2d at 477.  Moreover, the court in 
Macri
 applying the 
Zehr
 principles held that prospective jurors should be examined to determine the existence of prejudice against the standard of proof.  
Macri
, 185 Ill. 2d at 37.  Therefore, in order to discover prejudice or bias that exists in the mind of a juror and to fully protect a defendant's right to an impartial jury, some inquiry into the proposed juror's views on the defendant's burden of proof in an insanity case is required when requested by defense counsel as a result of a question by a potential juror as to the burden of proof.   
 
 

Here, the general questions asked of the potential jurors as to whether they would follow the law and could be fair and impartial were insufficient to demonstrate that prejudice or bias would be discovered, particularly in the complete absence of any discussion about the applicable law regarding defendant's burden of proof and standard of proof. Such broad inquiry failed to call attention to specific matters which might lead the jurors to display disqualifying attitudes and preoccupations about the law as it applies to the insanity defense.  The supreme court recognized that in cases involving the insanity defense, a defendant's right to an impartial jury is not adequately protected by a general 
voir dire
 regarding whether the prospective jurors would follow the court's instructions on the law. 
 Stack
, 112 Ill. 2d at 313.  Rather, to fully protect a defendant's rights, the court concluded that some "particular" inquiry into the proposed juror's views on the insanity defense is required.  
Stack
, 112 Ill. 2d at 313.

Recognizing the need for "particular" inquiry, amendments were made to Rule 431 regarding 
voir dire
.  We note that the committee comments to amended Rule 431 provide a specific explanation as to the addition of section (b): "The new language is intended to insure compliance with the requirements of 
People v. Zehr
, 103 Ill. 2d 472(1984).  It seeks  to end the practice where the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431, Committee Comments.

The general or broad statement of the law discussed by the trial court here with prospective jurors, 
as to the fact 
that the standard of proof was proof beyond a reasonable doubt, did not accurately or completely state the law as it applied to this case where the insanity defense was raised.  Here, the law imposed a burden of proof on defendant.  The prospective jurors were not informed that a burden of proof was imposed by law on the defendant.  Here, the law imposed a specific standard of proof on defendant.  The prospective jurors were not informed that the standard of proof imposed by law required defendant to prove by a preponderance of the evidence that he was not guilty by reason of insanity.  Here, the law imposed a lesser standard of proof on defendant than it imposed on the State.  The prospective jurors were never asked whether they would follow the law which imposes on defendant a different and lesser burden of proof than the burden of proof imposed by law on the State.  The prospective jurors were not asked whether they could find defendant not guilty by reason of insanity if defendant proved by a preponderance of the evidence that he was not guilty by reason of insanity.

           Although the insanity defense upon which the defendant relied is a well-recognized legal defense, it remains a subject of intense controversy and has been described as "a defense which is known to be subject to bias or prejudice."  
People v. Bowel
, 111 Ill. 2d 58, 65 (1986).  Questions concerning jurors’ views on the insanity defense have been determined to be an appropriate area of inquiry on 
voir dire
 given the court's recognition that lay persons may regard the defense with suspicion.  
People v. Cloutier
, 156 Ill. 2d 483, 496 (1993).  
We are mindful that the purpose of 
voir dire
 is to ascertain sufficient information about beliefs and opinions of prospective jurors so as to allow removal of those members of the venire whose minds are so closed by bias and prejudice that they cannot apply the law as instructed in accordance with their oath.  
People v. Seuffer
, 144 Ill. 2d 482, 500 (1991).

We conclude that defendant’s right to an impartial jury is diminished when the possible prejudice of potential jurors against a lesser burden of proof imposed by law on a defendant is not subject to meaningful inquiry on 
voir dire
.  
In evaluating the court's exercise of discretion, the relevant inquiry is whether the questioning of the jurors reasonably assured that any prejudice or bias would be discovered. 
 People v. Diggs
, 243 Ill. App. 3d at 96.  We cannot say here, where the insanity defense was raised, that the trial court's refusal when requested by defense counsel, as a result of a juror's question to inform the jurors on 
voir dire
 of the defendant's burden of proof was a proper exercise of discretion which reasonably assured that prejudice or bias would be discovered.   We limit our decision to require that prospective jurors on 
voir dire
 be informed of the defendant's 
burden of proof and standard of proof imposed by law when the insanity defense is raised and we limit that requirement to insanity cases where defense counsel requests that prospective jurors be so informed.

B. Motion for Mistrial Due to the State's Subterfuge

Defendant next argues that
 
the trial court erred in failing to grant defendant's motion for a mistrial based on the State's purposeful subterfuge.  Defendant contends that the State used purposeful subterfuge to induce defendant to file a supplemental report by Dr. Schwartz which the State then used during cross-examination to impeach Dr. Schwartz.  As an initial matter, defendant's argument lacks any case law to support this claim of error.  Arguments that are raised in a defendant's brief but are unsupported by legal authority are deemed waived.  
People v. Dinger
, 136 Ill. 2d 248 (1990).   

Waiver aside, defendant's argument still fails.  A trial court’s finding in denying a motion for mistrial will not be reversed absent an abuse of discretion.  
People v. Wilson
, 309 Ill. App. 3d 235, 242 (1999).  Here, nothing in the record indicates that the State used any subterfuge to induce defendant to produce another report  from Dr. Schwartz.  In the absence of a record to show otherwise, this court must presume that the trial court ruled or acted correctly.  
People v. Majer
, 131 Ill. App. 3d 80 (1985).  Any conversations that took place prior to trial between the State and the defense were not part of the trial record and cannot, therefore, be reviewed by this court.

Furthermore, any additional reports that defendant produced from Dr. Schwartz and that contradicted Dr. Schwartz's previous report were properly used by the State for impeachment.  The credibility of a witness is put in issue when the witness testifies during trial. 
 People v. Bull
, 185 Ill. 2d 179 (1999).  Here, Dr. Schwartz prepared two reports, one dated October 1995, and the other, August 1998.  The 1998 report included pertinent information not contained in the 1995 report.  As such, the State had a right to cross-examine Dr. Schwartz regarding the discrepancies in the two reports, including the omissions in the 1995 report and the new information in the 1998 report, which was submitted closer in time to trial.

C. Jury Instructions

Defendant next argues that the trial court erred in failing to strike the second paragraph of Illinois Pattern Jury Instruction, Criminal, No. 24-25.01, which stated: "Abnormality manifested only by repeated criminal, or otherwise anti-social conduct, is not mental disease or mental defect."  Illinois Pattern Jury Instructions, Criminal, No. 24-25.01 (2d ed. 1981).  The Illinois Supreme Court has held that it is error to include the above instruction where it is not supported by the evidence at trial. 
 People v. Fierer, 
124 Ill. 2d 176 (1988).  Determination of proper jury instructions lies within the sound discretion of the trial court, and a reviewing court will not disturb that determination absent a clear abuse of discretion.  
People v. Patterson
, 154 Ill. 2d 414 (1992).  The evidence in the present case was sufficient to warrant inclusion of the above jury instruction.
 

Defendant bases his entire argument on the fact that Dr. Seltzberg, during cross-

examination by defense counsel, answered "No," when defense counsel stated: "[Defendant] didn't have an abnormality manifested only by repeated criminal or otherwise antisocial conduct, did he?"  Defense counsel then proceeded with the next question and stated: "So, he's not excluded from the mental disease or defect because he's antisocial or he's a persistent criminal?"  Dr. Seltzberg answered, "I would not equate that, no."  Defendant now argues that, based on this exchange alone, the trial court erred in including the second paragraph of Illinois Pattern Jury Instruction, Criminal, No. 24-25.01 (2d ed. 1981).  We find defendant's argument unpersuasive.

The evidence at trial, taken as a whole, demonstrates that the inclusion of the second paragraph was warranted.  At trial, Todd Rogers testified that defendant was one of his sources for obtaining cocaine and that he had purchased cocaine from defendant back in May 1994.  Thus, there was evidence of defendant's repeated criminal behavior.  In addition, evidence was presented that defendant had repeated anti-social behavior that was not the product of a mental illness or disease.  Dr. Schwartz testified that defendant was depressed, unable to function and that he suffered from severe social and cognitive withdrawal.  Likewise, during direct examination Dr. Seltzberg testified that defendant had  impairment of his social functioning and that he suffered from a chronic adjustment disorder.  Dr. Seltzberg's limited response to defense counsel's cross-examination was insufficient to warrant excluding the second paragraph of the jury instruction when other evidence supported its inclusion. 
 
As such, the trial court properly included the second paragraph of Illinois Pattern Jury Instructions, Criminal, No. 24-25.01 (2d ed. 1981)

D. Expert Testimony

The remainder of our discussion concerns issues defendant raises with respect to the testimony of Dr. Seltzberg.  We address these issues as they may arise on retrial.  Defendant contends that Dr. Seltzberg improperly testified to a legal conclusion when she stated:

"The idea is that an Adjustment Disorder in itself is never really considered sever enough to be grounds for someone's severe impairment to the extent that they would be unable to appreciate or conform, it's not grounds for an insanity defense."

A jury's finding on the issue of insanity will not be disturbed unless it is so manifestly against the weight of the evidence as to indicate that the verdict was based on passion or prejudice.  
People v. Seaman
, 203 Ill. App. 3d 871 (1990).   The trier of fact has the right to weigh testimony and to determine credibility of witnesses, experts and lay alike, and is not, as a matter of law, obliged to accept opinions of psychiatrists concerning defendant's sanity at the time of the charged offense.  
People v. Banks
, 17 Ill. App. 3d 746 (1974).  Further, weight of a psychiatrist's opinion is to be measured by the reasons given for the conclusion and the factual details supporting it.  
People v. Martinez
, 86 Ill. App. 3d 486 (1980).  

In the case at bar, Dr. Schwartz and Dr. Seltzberg differed in their opinions as to defendant's sanity at the time of the commission of the offense.
  
Dr. Seltzberg testified that defendant suffered from a chronic adjustment disorder but that the adjustment disorder was insufficient to render defendant incapable of understanding the criminality of his conduct.  However, in addition to properly stating her assessment of defendant's mental fitness at the time of the offense, Dr. Seltzberg further added that an adjustment disorder is not grounds for an insanity defense.  This additional opinion was improper because it was not an expert opinion as to defendant's mental state but rather in the nature of a legal conclusion as to what constitutes "grounds for an insanity defense."

The jury, however, was under no obligation to accept Dr. Seltzberg's conclusion.  Further, the comment was limited.  Neither Dr. Seltzberg, nor the prosecution repeated the statement.  
Because this case is reversed and remanded, on retrial this comment or any similar comment suggesting a legal conclusion that defendant's behavior is not grounds for an insanity defense, should not be repeated.

E. Sentencing

Because we reverse and remand for a new trial, we need not address defendant's argument whether the trial court abused its discretion in sentencing defendant.

V. CONCLUSION

We find the trial court erred in failing to inform the potential jurors as requested by defense counsel as the result of a jurors question during 
voir dire
 of defendant's burden of proof imposed by law in this case where defendant raised the insanity defense.  As such, we reverse defendant's conviction and sentence.  A review of the record contains sufficient evidence to prove defendant guilty beyond a reasonable doubt of the offense of possession of a controlled substance and double jeopardy does not bar retrial of this offense.  
People v. Porter
, 168 Ill. 2d 201, 215 (1995).  We also note that we have made no finding as to defendant's guilt that would be binding on retrial.  
People v. Jones
, 175 Ill. 2d 126, 134 (1997).

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded for a new trial consistent with this opinion.

Reversed and remanded.

RAKOWSKI and TULLY, JJ., concur.