THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RUDOLPHO D. PINEDA, Defendant-Appellant.

Second District    No. 2—02—1129

Opinion filed June 28, 2004.

Charles M. Schiedel and Allen H. Andrews, both of State Appellate Defender's Office, of Springfield, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and L. Anita Richardson, of Chicago, for the People.

JUSTICE BYRNE delivered the opinion of the court:

Following a jury trial, defendant, Rudolpho D. Pineda, was convicted of attempted first-degree murder (720 ILCS 5/8—4(a), 9—1(a) (West 2002)) and armed violence (720 ILCS 5/33A—2 (West 2002)). The trial court imposed consecutive prison terms of 23 years for the attempted murder and 15 years for the armed violence. The court also ordered that defendant serve 85% of the 38-year aggregate term. Defendant appeals, arguing that he is entitled to a new trial because (1) the prosecutor indoctrinated the jury during *voir dire*, (2) the trial court erroneously admitted certain hearsay testimony, and (3) the prosecutor improperly argued that society had an interest in convicting defendant. We reject each of defendant's arguments and affirm his convictions accordingly.

## FACTS

The evidence at trial indicated that defendant stabbed Bart Borch-

ers and Tony Bryson during a New Year's Eve party at the home of Pat Schifter. The defense theory was that defendant acted in self-defense. Defendant arrived at the party with his girlfriend, Jamie Draper, and her friend, Latosha "Nicky" Cowell. There was conflicting evidence as to whether the partygoers ingested cocaine, marijuana, and large amounts of alcohol. Draper and defendant began arguing soon after they arrived, and Cowell saw Draper kissing Borchers while defendant was outside talking with someone else. Schifter and Bryson eventually asked defendant, Draper, and Cowell to leave, but Draper refused. Cowell overheard Borchers and Draper agree to check into a motel. Borchers and Bryson then confronted defendant in the kitchen and ordered him to leave. Defendant said he would leave with "the girls," but Borchers said "no." At trial, the parties disagreed on the details of the altercation that followed, but there was no question that defendant obtained a steak knife from a kitchen drawer and then cut Borchers and Bryson several times.

On direct examination, Cowell testified that she did not see defendant stab anyone. By the time she ran into the kitchen, Borchers was already bleeding and the other men were attempting to restrain defendant and wrestle the knife from him. However, on cross-examination Cowell admitted that she provided a different written statement to the police on the night of the incident. Cowell wrote that she saw the entire incident and recalled that Bryson and Borchers did not fight with defendant but instead tried to keep him in the kitchen. According to Cowell's written statement, she saw defendant grab a knife and stab one of the men in the neck. Cowell admitted at trial that the people at the party discussed the events before providing written statements. Cowell's written statement reflected what others had told her rather than her own personal knowledge because the police did not tell her to record only what she saw.

During closing argument, defense counsel unsuccessfully objected to the following statements made by the prosecutor:

> "Ladies and gentlemen, this is not Bart Borchers versus the defendant. This not Tony Bryson versus the defendant. This is the People of the State of Illinois versus the defendant. It's all of us. It's society.
>
> * * *
>
> Society is stating in one clear and unequivocal voice that we will not tolerate senseless violence. Over what? The defendant tries to kill two people over what? Because he thinks his girlfriend likes one of those other guys, because his girlfriend won't leave with him, because his girlfriend kisses another guy. That's why in his mind Tony Bryson and Bart Borchers deserved to be stabbed.

That's why they almost died. That's why Bart Borchers almost died because he had the gall, the audacity on New Year's Eve at the stroke of midnight to kiss [defendant's] girlfriend. And for that he received a stab to the throat and a stab to the stomach."

The jury found defendant guilty of attempted first-degree murder and armed violence. The court imposed consecutive prison terms of 23 years for the attempted murder and 15 years for the armed violence. Defendant's timely appeal follows.

## ANALYSIS

### 1. Jury Indoctrination

During *voir dire*, the prosecutor anticipated that the jury would hear the two inconsistent statements from Cowell at trial. Cowell's written statement provided on the night of the offense would inculpate defendant, but her expected recantation at trial would benefit the defense. Thus, the prosecutor asked 7 of 27 potential jurors whether they believed that a witness's statement made immediately after an incident is generally more accurate than the witness's testimony at trial several weeks or months later. Four individuals who eventually served on the jury responded that a statement made soon after the incident would be more reliable than one offered at trial.

Defendant argues that the prosecutor's hypothetical questions regarding inconsistent statements were designed to indoctrinate the jury and impeach Cowell before trial. The State responds, with little citation to authority, that a new trial is unnecessary because defendant was not prejudiced by the questions. The State additionally argues that defendant may not complain of the prosecutor's conduct because defense counsel asked potential jurors similar questions to prepare them for the theory of self-defense. Defense counsel asked several potential jurors whether they "could all keep an open mind and consider all the evidence before arriving at a verdict even if it is a situation of self-defense?" Each responded that he or she could keep an open mind, and one of the individuals who answered the question ultimately served on the jury.

*Voir dire* serves the dual purpose of enabling the trial court to select jurors who are free from bias or prejudice and ensuring that attorneys have an informed and intelligent basis on which to exercise their peremptory challenges. *People v. Gregg*, 315 Ill. App. 3d 59, 65 (2000). The right to a jury trial guarantees a fair trial by a panel of impartial jurors. It is well established that limitation of *voir dire* questioning may constitute reversible error where such limitation denies a party a fair opportunity to probe an important area of potential bias or prejudice among prospective jurors. The primary

responsibility of conducting the *voir dire* examination lies with the trial court, and the manner and scope of such examination rest within the discretion of the trial court. The trial court possesses great latitude in deciding what questions to ask during *voir dire*. *Gregg*, 315 Ill. App. 3d at 65. The standard for evaluating a court's exercise of discretion during *voir dire* is whether the questions posed and procedures employed created a reasonable assurance that prejudice would be discovered if present. *People v. Stewart*, 343 Ill. App. 3d 963, 977 (2003).

In *People v. Stack*, 112 Ill. 2d 301 (1986), the supreme court found reversible error in a trial judge's refusal to question prospective jurors about their attitudes toward the insanity defense, an issue that affected which verdict form would be used. The *Stack* court cited the especially controversial nature of the insanity defense as the reason for requiring more focused questioning of the venire on that topic. *Stack*, 112 Ill. 2d at 312-13.

However, in *People v. Howard*, 147 Ill. 2d 103, 135-36 (1991), the supreme court affirmed a trial court's denial of a defense request to ask prospective jurors about their attitudes toward handguns. The *Howard* court distinguished the insanity defense issue in *Stack*, noting that "the offender's use of a handgun as his weapon in committing the crimes charged was not a central issue at trial, much less pertinent to any of the forms of verdict." *Howard*, 147 Ill. 2d at 135-36. The supreme court has since cited *Howard* approvingly, stating that "[w]hile it is appropriate to ask prospective jurors whether they will follow the law [citation], the purpose of *voir dire* is not to ascertain prospective jurors' opinions with respect to evidence to be presented at trial." *People v. Buss*, 187 Ill. 2d 144, 179-80 (1999), *abrogated on other grounds by In re G.O.*, 191 Ill. 2d 37, 46-50 (2000).

Defendant argues that this case is similar to *People v. Bowel*, 111 Ill. 2d 58 (1986), in which the defense attempted to disclose its theory of mistaken identity to members of the venire. The trial court declined to ask potential jurors whether they had ever mistaken a person for someone else or had themselves been mistaken for someone else. The supreme court held that the trial court did not abuse its discretion in barring the questions because they were not designed to uncover bias or prejudice but, rather, "were for the purpose of educating jurors as to the defendant's theory of defense prior to trial, and as a means of selecting a jury that was receptive to that defense." *Bowel*, 111 Ill. 2d at 65. The court held that the proposed questions were improper because "[r]esolution of questions of mistaken identity depends upon the credibility of the witnesses and the weight of evidence, rather than upon a juror's predisposition toward a defense." *Bowel*, 111 Ill. 2d at 65.

■ The prosecutor in this case posed the question regarding the prior inconsistent statement to ascertain whether prospective jurors would credit Cowell's inculpatory written statement at the hospital. Like in *Bowel* and *Howard*, the question at issue in this case focused on the credibility of a witness and the weight of the evidence. Therefore, we reject the State's assertion that the question was "innocuous." However, we distinguish this case from *Bowel* and *Howard* and conclude that the trial court did not abuse its discretion in selecting a fair and impartial jury. See *Gregg*, 315 Ill. App. 3d at 65.

In *Bowel* and *Howard*, the supreme court held that the respective trial courts did not abuse their discretion in *barring* questions about evidence that would be offered at trial. However, in this case, the trial court *permitted* questions about such evidence. In light of the deferential abuse-of-discretion standard that applies to a review of *voir dire*, we conclude that the affirmance of the exclusion of the questions in *Bowel* and *Howard* does not mandate a reversal of the allowance of similar questions here.

*People v. Strain*, 194 Ill. 2d 467 (2000), teaches that, when the trial court errs during *voir dire*, the degree to which an attorney exacerbates the error during trial is relevant to determining whether the error is an abuse of the court's discretion. In *Strain*, the trial court declined the defendant's proposed questions regarding the venire's potential gang bias. The supreme court held that "when testimony regarding gang membership and gang-related activity is to be an integral part of the defendant's trial, the defendant must be afforded an opportunity to question the prospective jurors, either directly or through questions submitted to the trial court, concerning gang bias." *Strain*, 194 Ill. 2d at 477. The *Strain* court emphasized that the trial court abused its discretion in rejecting the defendant's proposed questions because "gang-related testimony was pervasive" during the trial. *Strain*, 194 Ill. 2d at 477. The supreme court quoted large portions of the prosecutor's closing argument in which he repeatedly reminded the jury of the importance of gang-related testimony. *Strain*, 194 Ill. 2d at 478-80. *Strain* illustrates that irregularities during *voir dire* should be viewed in the context of the entire trial.

Here, the State posed the challenged question to only 7 of 27 prospective jurors, and only 4 of those 7 ultimately served on the jury. Even if the four jurors were predisposed to the State's interpretation of Cowell's inconsistent statements, defendant was not prejudiced by the jurors' presence. The prosecutor did not mention the inconsistency of Cowell's statements during his opening statement or closing argument. The inconsistency was illustrated only during the cross-examination of Cowell, and even then, the prosecutor did not argue

that the prior written statement was more reliable than the trial testimony. We conclude that the trial court did not abuse its discretion because the prosecutor's questions during *voir dire* did not affect the outcome of the trial.

Because we conclude that the trial court did not abuse its discretion in monitoring the State's questioning of the venire, we do not consider the State's argument that the defense is estopped from raising the issue because it offered its own questions regarding self-defense.

### 2. Admissibility of Alleged Hearsay Statement

At trial, Bryson testified that Draper and Cowell visited him in the hospital emergency room after the stabbing. According to Bryson, Draper "thanked [him] for what [he and Borchers] did that night," and both Draper and Cowell "apologized for what happened." Draper did not testify. However, Cowell testified that she and Draper went to the hospital because they were concerned about the safety of Bryson and Borchers. Cowell denied that she or Draper apologized for defendant's conduct.

Defendant argues that Bryson's testimony regarding Draper's out-of-court statements at the hospital is inadmissible hearsay because "[t]he jury could only conclude that if Draper thanked Bryson, she was grateful that he had intervened to protect her from [defendant]." The State argues that Bryson's testimony is admissible under the state-of-mind exception to the hearsay rule or, if the testimony is inadmissible, the trial court committed only harmless error in allowing it.

Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. *People v. Doyle*, 328 Ill. App. 3d 1, 14 (2002). "Statements that indicate the declarant's state of mind are admissible as exceptions to the hearsay rule when the declarant is unavailable to testify, there is a reasonable probability that the proffered hearsay statements are truthful, and the statements are relevant to a material issue in the case." *People v. Caffey*, 205 Ill. 2d 52, 91 (2001). The State does not explain Draper's unavailability at trial. Moreover, the truthfulness of the hearsay statements is doubtful because Cowell's trial testimony conflicts with Bryson's assertion that Draper apologized for defendant's conduct. Therefore, we conclude that the trial court should not have permitted Bryson or Cowell to testify about Draper's statements at the hospital. However, we conclude that the admission of the hearsay is harmless error.

Errors in the admission of hearsay evidence are harmless when properly admitted evidence is so overwhelming that no fair-minded

jury could reasonably have voted to acquit the defendant. Admission of hearsay is harmless if there is no reasonable probability the verdict would have been different had the hearsay been excluded. *People v. Soto*, 342 Ill. App. 3d 1005, 1014 (2003).

We agree with the State that there was overwhelming evidence of defendant's guilt. Both of the victims testified that they were in the kitchen with defendant when he flew into a rage, grabbed a steak knife from a drawer, and stabbed Borchers. Borchers testified that when he told defendant to put the knife down, defendant lunged at him and cut him in the neck and abdomen. Bryson corroborated Borcher's testimony and further stated that he was stabbed three times while attempting to subdue defendant. The jury clearly credited the victims' testimony. We conclude that there is no reasonable probability that the verdict would have been different had Draper's statements been excluded. See *Soto*, 342 Ill. App. 3d at 1014.

Defendant argues that this case is similar to *People v. Davis*, 130 Ill. App. 3d 41 (1984), in which the trial court permitted the victim of a robbery to testify that the defendant's mother apologized for "what [the defendant] did" and asked the victim to drop the charges. *Davis*, 130 Ill. App. 3d at 51. The appellate court held that the victim's testimony regarding the out-of-court statement was inadmissible hearsay because it was designed "to raise the highly prejudicial inference that the defendant's own mother believed him to be guilty of the crimes charged." *Davis*, 130 Ill. App. 3d at 53.

This case is easily distinguishable from *Davis*. Here, the out-of-court statements merely indicated that Draper was concerned for the welfare of Bryson and Borchers and that she felt sorry that the altercation occurred. Unlike the mother's plea to drop the charges in *Davis*, Draper's expression of remorse, gratitude, and concern for those stabbed in this case does not necessarily manifest a belief that defendant was guilty of an offense. The defense could have cited Draper's argument with defendant before the stabbing as evidence that her statement at the hospital reflected an appreciation for Bryson and Borchers attacking defendant. Therefore, Draper's out-of-court statements were equally consistent with defendant's theory of self-defense as with the prosecution's account of the events. Although we agree with defendant that the trial court should not have admitted Draper's out-of-court statements, we hold that the court did not commit reversible error in doing so.

### 3. Prosecutor's Closing Argument

■ Finally, defendant argues that Assistant State's Attorney Eric Kalata committed reversible error during closing argument when he

told the jury that the case was not brought by the victims, but that "society" had an interest in convicting defendant. Defendant also cites Kalata's statement that "[society] will not tolerate senseless violence." The State correctly responds that defendant waived the issue by failing to raise it in a posttrial motion. See *People v. Blue*, 189 Ill. 2d 99, 127 (2000) (to preserve an issue for appeal, a criminal defendant must raise the issue at trial and in a posttrial motion).

Regardless of defendant's waiver of the issue, we conclude that his claim lacks merit. Courts allow prosecutors great latitude in making closing arguments. *Blue*, 189 Ill. 2d at 127. In closing, the State may comment on the evidence and all inferences reasonably yielded by the evidence. However, argument that serves no purpose but to inflame the jury constitutes error. *Blue*, 189 Ill. 2d at 128. Closing arguments must be viewed in their entirety and alleged erroneous arguments must be viewed in context. " 'The regulation of the substance and style of the closing argument is within the trial court's discretion, and the trial court's determination of the propriety of the remarks will not be disturbed absent a clear abuse of discretion.' " *Blue*, 189 Ill. 2d at 128, quoting *People v. Byron*, 164 Ill. 2d 279, 295 (1995). A reviewing court employs the abuse-of-discretion standard when reviewing whether the trial court erroneously overruled a criminal defendant's objection to comments made during closing argument. *People v. Kirchner*, 194 Ill. 2d 502, 554 (2000)

Defendant argues that Kalata's statements are similar to those found to be improper in *People v. Johnson*, 208 Ill. 2d 53 (2003). In *Johnson*, the prosecutor stated during closing argument that " '[w]e as a society do not have to live in [the defendants'] twisted world' " but can instead reject their values and " 'stand together.' " *Johnson*, 208 Ill. 2d at 79. The supreme court interpreted these comments as an improper effort to "identify and merge [the prosecutor's] position, on some irrelevant and ethereal level, with the jury, the society and the community." *Johnson*, 208 Ill. 2d at 79.

We distinguish this case from *Johnson* on the facts. When Kalata mentioned that society had an interest in the case, he was not attempting to align the jury and society with the prosecution; Kalata was merely emphasizing that the State, rather than the victims, had initiated the prosecution. Although Kalata urged the jury not to "tolerate [defendant's] senseless violence," we conclude that Kalata's subsequent summary of the evidence shows that he was only illustrating the rashness of defendant's conduct.

Moreover, the *Johnson* court reversed the defendants' convictions in that case based on the cumulative effect of several improper comments during closing argument: the prosecutor also (1) appealed to

the jury to " 'send a message' " of support to law enforcement and to society in general, (2) likened the defendants to animals, (3) cast the prosecution in terms of "good versus evil," (4) mischaracterized evidence and the applicable law to outrage the jury, and (5) suggested that the defense engaged in deceptive tactics. *Johnson*, 208 Ill. 2d at 79-80. Kalata did not engage in any such misconduct in this case, and we distinguish *Johnson* accordingly. A review of the entire closing argument reveals that Kalata focused on the facts of the case rather than on abstract notions of society's duty to convict criminal defendants. Therefore, we conclude that the trial court did not abuse its discretion in overruling defendant's objections to these isolated statements.

For the preceding reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

HUTCHINSON and GILLERAN JOHNSON, JJ., concur.